**People of the State of Illinois, Plaintiff-Appellee,
v. Fred Jelks, Defendant-Appellant.**

**Gen. No. 52,594.**

First District, Second Division.

February 27, 1968.

Dean E. Peterson, of Chicago, for plaintiff in error.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James B. Zagel, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE McNAMARA delivered the opinion of the court.

Fred Jelks was convicted of robbery in a bench trial. He appealed directly to the Supreme Court and that court transferred the appeal to this court. He appeals the conviction contending that the trial court erred in refusing defendant's request to see complainant's statement, and that the evidence fails to show beyond a reasonable doubt that the defendant is guilty of the crime.

At 10:48 p. m., May 22, 1963, the complainant, Mrs. Rosie Lee Noland, left her home at 3628 West Grenshaw in Chicago and proceeded east on her way to work. About one-half block from her home, she was accosted by a man who grabbed her and forced her between two houses. A struggle of approximately five minutes ensued during which time she screamed and resisted to the best of her ability. During the struggle she was stabbed under the arm with what appeared to be a knife. Near the end of the struggle, the complainant threw her purse some distance away from the scene. The assailant broke away, picked up the purse and ran away. At that time, the purse contained money, keys and other personal belongings. The complainant later found the purse, but it contained only the keys.

After the robbery, she talked to one of her neighbors, in front of whose house the incident had occurred. She then returned home and called the police. She described

her attacker as being about 35 years of age, 5' 4" tall with a moustache, sideburns and bulging eyes. She told the police that his hair was long, wavy, greasy, and had "goo" on it. She also said that her assailant wore a small, black felt hat. Three days later, on May 25, while Mrs. Noland was walking near Central Park and Roosevelt Road, she saw defendant, whom she recognized as the man who had robbed her. She immediately summoned a policeman who arrested the defendant. When arrested, the defendant was wearing an iridescent overcoat, a dark hat and a brown or beige suit.

At the trial, Mrs. Noland positively identified defendant as the man who robbed her. She testified that, when first accosted, she was standing on the sidewalk, which was lighted by "daylight lights" suspended from poles. She stated that the lighting was good. She testified that they were as close as two people fighting and that she could see him all during the struggle; that for about three seconds she could see him "just as plain as I can see him now." She stated that his hair looked the same at the time of the arrest as at the time of the robbery.

The arresting officer testified that at the time of the arrest defendant had "processed hair," that his hair was long on the top of his head, but that he did not have sideburns. He also stated that the defendant denied committing the robbery. Both the arresting officer and a detective testified that defendant told them that he had spent the evening alone at a movie, but he could not recall which theatre or what movie he saw, but that it was a double feature.

On behalf of the defense, the defendant and Edward Bester testified that they were together from about 11:00 a. m. until after midnight on the day of the robbery. They had visited the Social Security Board until noon, and from then until 6:30 p. m. they idled away the time in the neighborhood. At about 6:30 p. m. they went to

the Maryland theatre on the south side. They watched both features twice and left when the theatre closed about 12:30 a. m. They then returned to the west side and parted company at about 1:30 a. m. Neither of them was certain as to what pictures were playing, but Bester thought they were "Billy Budd" and "The Mongol." He also testified that he next saw the defendant on the day of the arrest, that they were together at that time, and that he saw Mrs. Noland point out the defendant. However, he was told to move along and did not hear what she said about the robbery.

Bester also testified that he had not seen the defendant again until the day of trial. He had not talked to counsel for the defendant because he had been working as a musician in Champaign, Illinois. On August 1, 1963, he was asked to recall his whereabouts on May 22, and to testify for the defense.

Defendant denied committing the robbery. He testified that he and Bester had attended the Maryland theatre once a week for about six years and that he had great difficulty remembering movies or actors. However on May 22, he thought one of the features was a "picture about ships starring Robert Ryan." He testified that on the day of his arrest he was coming from his mother's home to meet Bester. His mother lived a few doors from the scene of the robbery. He passed the complainant on the street, noticed her staring at him, and asked her if she knew him. He went on to meet Bester and, shortly thereafter, was arrested. He testified that he had visited his mother's home occasionally, but had never seen the complainant prior to the day of his arrest. Defendant testified that on May 22 he had grease on his hair, but that he had his hair cut in jail because "you can't use grease while in jail."

Mr. Waddie Daniel testified for the defense that the street on which the robbery occurred was illuminated

poorly; that the street lights there "are not as good as ordinary light bulbs."

At trial, it was stipulated that defendant was 35 years old.

Defendant contends that the trial court erred in refusing to allow defendant to see the original description of the robber given to the police by the complainant. After the State had rested its case, counsel for defendant moved for the production of the original description. The State asked for what purpose the request was made. The following discussion then took place:

> "THE COURT: Look, you will have no problem with me. If you want to recall her, if you want to have her recalled to have further cross-examination, I will let you do that. Actually your request for this should have been made earlier when she was on the stand.
>
> "MR. ADAMS (Defense counsel): I understand that, Judge. Alright, I will withdraw the motion, Judge."

██ ██ "The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment." Brady v. Maryland, 373 US 83 (1963); People v. Hoffman, 32 Ill2d 96, 203 NE2d 873 (1965). Defendant is entitled to the production of a prior statement after a showing that such a statement exists. People v. Neiman, 30 Ill2d 393, 197 NE2d 8 (1964). Defendant contends that the prior description was not produced because the State made spurious objections when the request for production was made. However, the record shows clearly that the State interposed no objection, but inquired only as to the purpose of the request made by defendant. This inquiry was proper. It is also clear that the court ruled favorably on the request, and that it was withdrawn voluntarily by counsel for the defend-

ant. Further, in the instant case, defendant concedes that the prior statement would have had to be reduced to writing to be available for production. There is nothing in the record to indicate that Mrs. Noland ever gave a description of the robber which had been reduced to writing. In the absence of any showing that such a prior description existed, it cannot be argued that the State suppressed any evidence which might have been helpful to defendant.

Cases cited by defendant are inapplicable to the case at bar. In Brady v. Maryland, supra, defendant pleaded guilty to a murder charge, but requested life imprisonment instead of death. Defendant had requested prior statements of his codefendant. He was given several statements, but was denied access to the statement in which his companion had admitted the actual killing. The United States Supreme Court reversed the conviction because of the suppression of evidence by the State. In People v. Hoffman, supra, the conviction was reversed because the State suppressed a pair of men's shorts found at the scene of the crime, despite defendant's request to examine them. In Giles v. Maryland, 386 US 66 (1967), a rape conviction was reversed because the prosecution suppressed a juvenile court report concerning prosecutrix and also suppressed statements made to the police which were contradictory to the testimony at trial. In Miller v. Pate, 386 US 1 (1967), the conviction was reversed because the prosecution produced testimony that a pair of shorts were stained with blood, and linked these shorts with the defendant. Defendant was denied permission to examine the shorts. During post-conviction review, it was learned that the shorts were in fact stained with reddish paint.

 In all of these cases there was a deliberate concealment by the State of evidence or statements which defendants had asked to see. There is no such concealment by the State in the instant case. If such a prior

statement existed, it was not produced only because of the voluntary waiver made by defendant. He cannot now complain of error.

■■■■■ Defendant next contends that the State failed to prove him guilty of robbery beyond a reasonable doubt. Defendant concedes that the law is well settled, that the testimony of one witness as to identification, if positive, and the witness credible, is sufficient to support a conviction even though denied by the defendant and contradicted by an alibi defense. People v. Perkins, 17 Ill2d 493, 162 NE2d 385 (1959); People v. Ashley, 18 Ill2d 272, 164 NE2d 70 (1960). Where there are conflicts in evidence, going to the credibility of the witnesses, the determination of that conflict is a function of the trier of fact, who hears and sees the witnesses and is better equipped to evaluate their demeanor, sincerity, and the weight to be given their testimony, than is the reviewing court. People v. Wysocki, 20 Ill2d 62, 169 NE2d 264 (1960).

But defendant urges that it is improbable and contradictory to human experience to believe that he would have committed a robbery a few doors from his mother's residence or that he would have spoken to the complainant three days later if he had robbed her. However, such circumstances are not contrary to human experience. In People v. Young, 65 Ill App2d 185, 213 NE2d 146 (1965), the court rejected defendant's contention that it was contrary to human experience that he would rob a gas station two blocks from home, then return to the station a few days later to get change from the same attendant. At page 190, the court stated:

> "Where material facts in issue are conflicting, it is the duty of a jury, or of a court sitting without a jury, to determine the credibility of the witnesses and the weight to be given their testimony,

and on review this court will not substitute its judgment for that of a jury, or trial court."

The trial court found nothing incredible or improbable about the circumstances of this case, and neither do we. Therefore, we find that the defendant was proven guilty beyond a reasonable doubt.

For the foregoing reasons, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

BURKE, P. J. and LYONS, J., concur.