**People of the State of Illinois, Plaintiff-Appellee, v. John Hampton, Defendant-Appellant.**

**Gen. No. 51,841.**

First District, Fourth Division.

November 27, 1968.

Rehearing denied December 18, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Philip S. Allen and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Howard Levine, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

OFFENSE CHARGED: Armed robbery.

JUDGMENT: After waiving his right to a jury trial, the defendant was convicted of robbery at a bench trial and sentenced to serve not less than eleven nor more than fifteen years in the State penitentiary. The court entered a finding of guilty as to robbery only, rather than armed robbery, because of the State's failure to prove, as alleged, that the defendant had in fact used a dangerous weapon in the commission of the crime.*

CONTENTIONS ON APPEAL:

1) The trial court's failure to conduct a competency hearing after a bona fide doubt of competency had been raised at trial amounted to a violation of due process of law contrary to the Constitutions of the United States and of the State of Illinois, and thereby deprived the defendant of his right to a fair trial.

2) The defendant was not proven guilty beyond a reasonable doubt.

3) The sentence imposed is more severe than is warranted by the record and should be modified accordingly.

EVIDENCE. **Testimony of State's witnesses.**

On December 5, 1965, Hudson Montgomery, according to his testimony, was working a late shift for the Yellow

---

* Ill Rev Stats 1965, c 38, § 18–1.

Robbery.] (a) A person commits robbery when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force.

59

Cab Company. At about 12:30 a. m., as he was driving past the 2600 block of West Madison Street, his cab was flagged by the defendant, who entered and directed him to drive to the intersection of Kedzie and Franklin. The witness said that he was tired and wanted to check in, but the defendant said, "I may be drunk, and I want to go home," so the witness reluctantly agreed to drive him to his destination. Arriving at Kedzie and Franklin Boulevard, the defendant said he had really wanted to go to Elm and Franklin Streets, and persuaded the driver to take him there, directing him through a series of turns into an unfamiliar section of the city.

The witness further testified that the defendant then grabbed him around the neck, put an object against his head and said, "Give me your money." (At the trial, however, the witness was unable to identify the object.) The defendant then took about $19 and some change from the witness and told him to lie down on the front seat, which he did. The defendant left with the money and began running, and the witness started to follow him. A police car appeared and the witness told the officers what had happened, after which the officers followed the defendant into a dead-end alley and apprehended him.

Officer Robert Dougherty testified that he and his partner, William Alexander, were on patrol near 230 Elm Street when they saw a cab stopped in the middle of the street and saw the driver chasing the defendant. When they approached the driver he told them he had been robbed, and they began following the defendant whom they saw walking on Elm Street. When the defendant saw the police car following him he darted around a corner and began running down an alley where, after a brief scuffle, he was arrested, taken back to the police car and searched. In one pocket was found $19.50 (eighteen $1 bills and six quarters), and in another forty cents. The $19.50 was admitted into evidence at trial. After arresting the defendant the officers unsuccessfully

searched the area for a weapon, during which time the defendant attempted to leave the police car and had to be subdued.

**Testimony of defense witnesses.**

The defendant, John Hampton, testified that on December 5, 1965, at 12:30 a. m., he flagged a cab at Madison and Oakley Streets, entered and directed the driver to take him to Elm and Franklin, meaning Elm and Franklin Streets, but the driver apparently misunderstood him and went to Kedzie and Franklin Boulevard. The defendant stated that after a brief argument he persuaded the cab driver to take him to the correct destination—Elm and Franklin Streets—where his brother lived. Upon arriving there he paid the driver $4.50, using a $5 bill, but left no tip. He stated that when he left the cab the driver followed him, waved a gun, and told him to stop or he would shoot. The defendant denied taking any money from the driver and further denied that he was running up the alley when the police arrived, or that he was attempting to escape from them. Instead, he said that when he saw no lights on in his brother's home he started walking through the alley to his own home which was only a short distance away.

The defendant further testified that he had previously been convicted three times on guilty pleas, and that he was on parole at the time of his arrest.

Sally Hampton, mother of the defendant, testified that he had lived with her since being paroled, and had been working regularly. She stated that she had another son living at Franklin and Elm Streets in Chicago.

After the defendant had been found guilty, the State in aggravation introduced evidence establishing that in May of 1946, the defendant had been convicted of assault to rape and was sentenced to a term of one year to 18 months; that in January of 1952, the defendant pleaded guilty to a charge of armed robbery and was

sentenced to two to five years in the penitentiary; that in March 1956, after pleading guilty, he was convicted of armed robbery and sentenced to serve ten to thirty years in the penitentiary with a concurrent sentence of ten to twenty years, also for armed robbery; and that at the time of his arrest he had been released from the penitentiary on parole from this last offense.

In mitigation counsel for defendant said he had nothing to offer, but remarked, "I further ask, Your Honor, if he does see fit to incarcerate the defendant, to try and get a better examination and possibly some better determination of the man's mental abilities." When the court asked if he was raising the point of incompetency, he said, "No, I am not. But I am just saying at some future time it should be gone into thoroughly. I can't understand him. He can understand me, Judge, he knows what the charge is, he insists he is not guilty. I believe him on that. But I am not raising the question of his competency at this time."

Opinion.

1) The defendant first contends that the trial court's failure to conduct a competency hearing after a bona fide doubt of competency had been raised at trial amounted to a violation of due process of law contrary to the Constitutions of the United States and of the State of Illinois, and thereby deprived the defendant of his right to a fair trial.

On May 10, 1966, defendant was tried in the instant case. Prior to the trial the court had ordered an examination of the defendant by Dr. William H. Haines of the Behavior Clinic of the Circuit Court. The report filed in the cause found that the defendant had "Sociopathic personality disturbance. He knows the nature of the charge and is able to cooperate with his counsel." In that report Dr. Haines further stated that in 1950 the defendant had been examined by him on several occasions, at which time the defendant had been confined as a criminal sexual

psychopath; that defendant had been examined by the Behavior Clinic again in 1952, and that a copy of the report submitted to the court at that time was enclosed. Dr. Haines stated that in 1950 he was of the opinion that the defendant was improperly classified as a sexual psychopath, and that in 1952 he stated with reference to the defendant: "[He has] inadequate personality make-up. He knows the nature of the charge and is able to cooperate with his counsel."

■■ In People v. Bender, 27 Ill2d 173, 188 NE2d 682, it is said at 175:

> ". . . where, before or during the trial, facts are brought to the attention of the court, either by suggestion of counsel or the State, or by the court's own observation, which raise a bona fide doubt of the defendant's present sanity, a duty devolves upon the court to cause a sanity hearing to be held, and this is true even if counsel does not raise or argue the point in the trial court. People v. Burson, 11 Ill2d 360."

Again, in People v. Pridgen, 37 Ill2d 295, 226 NE2d 598, the court said at 298:

> "Nevertheless, it is within the discretion of the trial judge to decide whether the facts and circumstances raise a bona fide doubt of the defendant's sanity so as to require a hearing. People v. Milligan, 28 Ill2d 203; People v. Baker, 26 Ill2d 484."

■ The examination conducted by the Behavior Clinic immediately prior to trial indicated that the defendant was competent to stand trial. In the trial of the case defendant's testimony covered 50 pages of the record; it reflects no evidence of incompetency, nor is there found any irrational behavior on the part of the defendant. In fact, one day after he was sentenced, the defendant wrote a letter asking that notice of appeal be filed in

his case. The case of People v. Sims, 34 Ill2d 206, 215 NE2d 201, is analogous to the one at bar. In that case the defendant was examined by the Behavior Clinic and found to be competent to stand trial. The Supreme Court stated at page 209:

> "We have often stated that if before or during trial, facts are brought to the attention of the court which raise a bona fide doubt as to defendant's capacity to stand trial, the judge must order a sanity hearing. [Citing cases.] The test of mental competence is the ability of the accused to understand the nature of the proceedings against him and to adequately aid in the preparation of his defense. (People v. Olmstead, 32 Ill2d 306.) The second Behavior Clinic report states that defendant was malingering. This conclusion is further borne out by a reading of his testimony at trial where he testified in a clear, lucid manner and had no difficulty in answering questions by respective counsel. His testimony also showed him to be well oriented and well aware of the nature of the proceedings against him. Actually there was no denial of a hearing with respect to mental capacity as no request for such a hearing was made. Considering the results of the two Behavior Clinic reports and after examining the record, we conclude that the trial judge did not abuse his discretion."

This statement is directly applicable to the instant case. We too have carefully considered the record, particularly that portion covering the defendant's testimony and the report of the Behavior Clinic, and have concluded that the trial judge, under the circumstances present here, did not abuse his discretion in not ordering a competency hearing.

Furthermore, although there may be extraordinary circumstances under which a duty devolves upon the court

64

to conduct a competency hearing, notwithstanding counsel's failure to argue the point at trial, still it is worthy of note that in the instant case not only was no request for such a hearing ever made, but to the contrary, counsel for the defendant, when asked by the court if he was raising the point of defendant's incompetency, specifically stated, "No, I am not."

■■ 2) The defendant next contends that the State failed to prove him guilty beyond a reasonable doubt. In support of that contention he argues that the testimony of the complaining witness is incredible and should not be believed; that further, it is inherently unreasonable to believe that defendant would have the temerity to commit a crime in his own immediate neighborhood. We find it unnecessary to repeat the testimony of the complaining witness, which has already been presented in detail in this opinion. It is a well-settled rule of law that the credibility of the witnesses is a question for the trier of fact who saw and heard the witnesses, and that his determination will not lightly be disturbed on review. People v. White, 63 Ill App2d 105, 211 NE2d 9; People v. Cox, 22 Ill2d 534, 177 NE2d 211.

■ This rule is particularly applicable where, as here, the testimony in question has been corroborated by other evidence at trial. The testimony of the complaining witness is corroborated by that of Officer Dougherty, who testified that when the defendant saw his police car following him he darted around the corner, began running down an alley, and after being apprehended again attempted to escape and had to be subdued. Although the attempted flight of an accused does not of itself raise a presumption of his guilt, still it is a circumstance tending to prove guilt. People v. Rappaport, 362 Ill 462, 200 NE 165. See also People v. Davis, 14 Ill2d 196, 151 NE2d 308; People v. Neiman, 90 Ill App 2d 337, 232 NE2d 805.

■ ■ Defendant also suggests that it is unreasonable to believe he would commit a crime in his own immediate neighborhood. That contention is without merit. The precise question has been considered and answered in People v. Jelks, 92 Ill App2d 374, 235 NE2d 339 in which the court stated that the queston was a matter of credibility for the court to resolve after considering all the circumstances in the case. We find nothing incredible or improbable about the circumstances present in the instant case. After a careful consideration of the record we cannot say that the trial judge was unjustified in his evaluation of the evidence and in finding the defendant guilty beyond a reasonable doubt.

■ 3) The defendant argues that the sentence imposed was too severe, and that under the facts a less severe minimum sentence would be adequate punishment. The applicable statute provides for punishment of a term from one to twenty years. (Ill Rev Stats 1965, c 38, § 18–1.) Under the circumstances in the instant case, and in consideration of defendant's prior record, we conclude that the sentence was not improper. People v. Taylor, 33 Ill2d 417, 424, 211 NE2d 673.

The judgment of the Circuit Court is affirmed.

Affirmed.

DRUCKER and ENGLISH, JJ., concur.