449 P.2d 953

**The STATE of Arizona, Appellee,**

**v.**

**Augustine Ybarra ORTIZ, Appellant.**

**No. 2 CA–CR 130.**

Court of Appeals of Arizona.

Feb. 4, 1969.

Gary K. Nelson, Atty. Gen., Carl Waag, Sp. Asst. Atty. Gen., Phoenix for appellee.

R. Lamar Couser, Tucson, for appellant.

HATHAWAY, Judge.

The defendant, tried and convicted by a jury, of burglary and grand theft, challenges the sufficiency of the evidence to sustain the convictions. He also contends that the convictions should be reversed because of the "apparent hostility, bias and prejudice on the part of the trial judge."

Reviewing the evidence most favorably to sustain the conviction, the following facts are disclosed. At about 3:20 a. m. on February 12, 1967, Officer Hust and Sergeant Greene, of the Tucson Police Department, received a radio broadcast in their respective patrol vehicles that a silent burglar alarm had sounded at the A. J. Bayless Market, 3933 East Pima, Tucson, Arizona. They were both at Speedway and Alvernon when they received the broadcast and immediately proceeded north on Alvernon to Pima. Sergeant Greene crossed the intersection of Pima and Alvernon and proceeded to approach the market from the back while Officer Hust approached from the front of the store. As Hust pulled in, he observed a blue pickup truck parked about ten feet west of the market and a person throwing something into the back of the truck.

Hust had started to get out of his police car when the person jumped into the truck and took off without lights, at a very rapid rate of speed, whereupon Hust jumped back into his car and started in pursuit of the truck. The truck just missed colliding with Sergeant Greene's vehicle which was approaching from the rear. Hust pursued the blue pickup truck at high speed to the intersection of Pima and Palo Verde, where the truck lost control and slid into a vacant lot. Hust stopped his car to see which way the truck was going to go and alighted. The truck slid sideways into some trees and underbrush, made a U turn and came back out towards the police vehicle. About 25 to 35 feet before reaching the police car, it swerved to the left and passed within about five feet of where the officer was standing. The bright lights, spotlight and red light of the officer's vehicle were turned on and as the truck passed the officer, he saw the driver's face. The officer had difficulty getting his car started, and when he finally succeeded in doing so he proceeded in the direction the truck had taken but was unable to catch it. The defendant was arrested several days later after Officer Hust identified the defendant, from several photographs shown to him, as the driver of the pickup truck. He repeated this identification when the defendant was taken into custody and at the trial.

Officer Greene, on the other hand, while approaching the Bayless market from the rear with his car lights turned off, observed someone standing by the west door of the market. This person immediately started running north towards the rear of the store, carrying something in his hands. Greene pursued him on foot but lost him in the dark.

The protective alarm system at the Bayless market was set up so that it would be activated at any time that a door either outside or inside of the market would be opened after the store was closed for the night. When so activated, the alarm did not make a loud ringing sound in the store but only a slight clicking sound. The west entrance door, which was about ten feet

from where the blue pickup truck had been parked parallel to the building, had been pried open and about 500 cartons of cigarrettes were missing from the carton cigarette rack located approximately 20 feet from the door. Several cartons were strewn on the floor between the rack and the doorway. One or two packages of cigarettes were lying on the ground in the parking lot just outside of the west entrance door. All other doors in the market were secured and undisturbed.

Sometime about noon on February 12, the police received a report that a pickup truck had been abandoned on property located about three blocks from where the defendant's mother resided. The investigating officer started a license check to determine ownership of the truck and called a wrecker to haul it away. At about this time, the defendant's brother-in-law appeared and stated that the truck was his and that it had been stolen. There was some damage to the left front fender and the rocker panel underneath the door on the driver's side, as well as scrape marks on the body. There was also some vegetation stuck to the mirror on the driver's side. This vegetation and paint scrapings from the damaged area were removed. At trial, the State established that paint scrapings taken from the vegetation at the empty lot where Officer Hust pursued the pickup truck matched these paint scrapings and that the vegetation removed from the truck matched that growing on the lot.

Examination of the interior of the truck, at the time it was found abandoned, revealed only a sweater, two straw hats, an impact wrench and other tools.

The defendant did not testify. He presented witnesses in his behalf who testified that the defendant and his wife were present at a dance at the Del Rio Ballroom in Tucson until the dance ended at about 1 a. m. of the morning of February 12, that the defendant and his wife went home at about 1:20 a. m. and remained there the rest of the night. The gravamen of the defense was that it was not the defendant

who was driving the blue pickup truck which was parked at the Bayless market.

The defendant contends that the trial court should have directed a verdict of acquittal since the State's case was based solely on circumstantial evidence and was not inconsistent with every reasonable hypothesis of innocence. Although we agree with the defendant as to the nature of the evidence against him, i. e., circumstantial, we do not agree that the existence of an inference of innocence mandates a directed verdict of acquittal. State v. Green, 103 Ariz. 211, 439 P.2d 483 (1968). As stated by our Supreme Court in *Green,* supra:

"But if the defendant's analysis were correct there would be no reason to have juries decide criminal cases in which the only evidence against the defendant is circumstantial, for the trial judge could determine at the close of the evidence whether there was any reasonable hypothesis of innocence." 439 P.2d at 484.

The function of this court in reviewing the defendant's conviction is to decide not whether we would reach the same conclusion as the jury but whether there is substantial evidence in support of the jury's verdict. State v. Bearden, 99 Ariz. 1, 405 P.2d 885 (1965); State v. Green, supra. We must therefore examine the evidence with this standard in mind.

It is elementary that the mere presence of an individual at the scene of a crime is insufficient to establish guilt. Carroll v. State, 90 Ariz. 411, 368 P.2d 649 (1962); State v. George, 95 Ariz. 366, 390 P.2d 899 (1964). However, presence at the *immediate* and *exact* spot where a crime is in the process of being committed is a very important factor to be considered in determining guilt. Tasco v. State, 223 Md. 503, 165 A.2d 456 (1960); Jones v. State, 242 Md. 323, 219 A.2d 77 (1966); Coleman v. State, 4 Md.App. 386, 243 A. 2d 24 (1968).

Here, in the wee hours of a Sunday morning, an unusual hour for a casual stroll in a market parking lot, but not an

unusual hour for burglarious efforts, the police officers received a call to check out the Bayless market because the silent burglar alarm had sounded. Within a matter of minutes, the officers arrived at the scene of the crime. Under these circumstances, the jury was not required to believe that the defendant was a mere observer of a crime that was being committed. Nor is this a case where a crime had been committed one or several hours before and the defendant happened, by chance, to come to the place where the crime had been committed. A rational inference to be drawn by the trier of fact was that the defendant was interrupted during the actual asportation of the fruits of the crime.

■ When the defendant was first seen by the police officers, he was no more than ten feet away from the door which had been pried open and was putting something in the truck parked there. Upon the officers' approach, he immediately fled at a high rate of speed. Flight, of course, is admissible as evidence of consciousness of guilt, State v. White, 101 Ariz. 164, 416 P. 2d 597 (1966); State v. Wayman, 104 Ariz. 125, 449 P.2d 296 (filed January 16, 1969); 2 Wigmore, Evidence § 276 (3d ed. 1940), but is insufficient in itself to sustain a conviction. United States v. Commonwealth of Pennsylvania, 267 F.Supp. 316 (E.D.Pa. 1966); State v. Thomas, 63 Wash.2d 59, 385 P.2d 532 (1963); Price v. State, 227 Md. 28, 175 A.2d 11 (1961); People v. Wells, 187 Cal.App.2d 324, 9 Cal.Rptr. 384 (1960). It however, like presence at the exact spot where a crime is in the process of being committed, is a factor that may be considered in determining guilt. Tasco v. State, supra; People v. Lofton, 64 Ill. App.2d 238, 212 N.E.2d 705 (1965).

■ It has been held that mere presence at the scene of a crime coupled with flight constitute no more than "suspicious circumstances" which, standing alone, are insufficient to sustain a conviction. People v. Draper, 69 Cal.App.2d 781, 160 P.2d 80 (1945); Commonwealth v. Williams, 179 Pa.Super. 496, 118 A.2d 228 (1955); Poythress v. State, 67 Ga.App. 324, 20 S.E.2d 212 (1942). Here, however, we believe sufficient inferences can be drawn from the totality of circumstances, flight, presence, time and place, and an absence of any rational explanation for the defendant's presence outside the Bayless market at 3 a. m., to support the jury's verdict. See State v. Monks, 1 Ariz.App. 518, 405 P.2d 456 (1965); Tasco v. State, supra; People v. Bryan, 27 Ill.2d 191, 188 N.E.2d 692 (1963); Bouchillon v. State, 160 Tex. Cr. 79, 267 S.W.2d 554 (1954).

■ The defendant seeks a new trial on the additional ground that the trial judge was hostile and prejudiced against him, thereby depriving him of a fair trial. He readily concedes that he is unable to point to anything in the record of the trial proceedings which would be indicative of this "bias." We have carefully examined the record, and with the exception of the trial court's refusal to direct a verdict in favor of the defendant, with which we are in agreement, we find not a single ruling adverse to the defendant's interest. In fact, the record discloses a meticulous concern on behalf of the defendant. The defendant insists that we must assume that the trial judge was in fact hostile because of his discussion of the defendant's background at the time of sentencing. The defendant would have us equate the trial judge's discussion as to the necessity of incarcerating the defendant for a sufficient period of time with personal bias. This we decline to do. Absent a showing of prejudice by the very conduct of the trial, it may not be assumed from the trial judge's attitude at sentencing. Cf. United States v. Bolden, 355 F.2d 453 (7th Cir. 1965); United States v. Trigg, 392 F.2d 860 (7th Cir. 1968). Nor can we say, as belatedly contended by the defendant in his reply brief, that the sentences imposed were excessive.

Judgments affirmed.

MOLLOY, C. J., and KRUCKER, J., concur.