PHILLIP IRVIN *v.* STATE OF INDIANA.

[No. 671S150. Filed May 30, 1972.]

*David F. McNamar, Steers, Klee, Sullivan & LeMay,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Stephen D. Clase,* Deputy Attorney General, for appellee.

DeBruler, J.—The appellant was indicted for a violation of the 1935 Narcotics Act (as amended) which indictment charges in relevant portion that the appellant:

> "did then and there unlawfully and feloniously possess and have under his control certain instruments, to-wit: an eye-dropper, hypodermic needle and cooker, with the intent to unlawfully administer and use narcotic drugs, which said instruments were then and there adapted for the use of narcotic drugs by injection in a human being, then and there being. . . ."

The appellant was tried in the Criminal Court of Marion County before the Honorable Saul I. Rabb, Judge, sitting without a jury, and found guilty. He was sentenced to not less than one nor more than five years. On this appeal, the appellant alleges that the evidence introduced against him should have been excluded because he was illegally arrested, and that even if the evidence was admissible, it was insufficient as a matter of law to support his conviction on this charge. Specifically he argues that there was no competent evidence on the issue of intent to use the eye-dropper and needle found on him for the injection of narcotic drugs.

The State relied in this case on the testimony of the arresting officer only. The crucial portion of his testimony as it relates to the evidence in this case is as follows:

> "Q.  Alright. Now, prior to the arrest and leading to the arrest, what did you see? How was your attention attracted to the defendant?

A. Well, I had received a radio run on an unconscious man at that address, a possible overdose of narcotics, is the way I received the run. Upon my arrival, I started up the stairs. Somebody on the lower level said the man was up on the exit to the roof, in the hallway. I went upstairs and heard a—just as I started up to the last landing, I heard what sounds like a piece of glass bust, break, and as I come to the top landing the subject was attempting to get up. He was more or less down on his hands and knees and he was incoherent. I looked at his eyes. His eyes were contracted and I was unable to make heads or tails of what he was trying to say at that time, and, I also found a cooker cap laying there, several matches. . . .

Q. This was laying. . . .

A. Laying on the floor.

Q. Along side the defendant?

A. Right.

Q. It was not on his person?

A. That was not on his person. There was also, after I stopped the subject and checked him, I questioned him, tried to question him, I placed him under arrest, and upon searching the subject I found the eye-dropper, needle, and, also, there was a fresh puncture mark on his arm with blood dried on it."

Thereafter, State's Exhibit 1 was admitted into evidence. This Exhibit consisted of a manilla envelope containing an eye-dropper, black socks, matches and a cooker cap. After this evidence was submitted, the officer testified as follows:

"Q. Officer, have you made other arrests involving the use of narcotic instruments?

A. Yes, I have.

Q. And, do you have an opinion as to the use made of the items which you have just identified as exhibit 1?

A. Yes, I do.

Q. What is that opinion?

A. My opinion, the subject had just taken an injection of the same and was using . . .

THE COURT: Marijuana or heroin, which?

A. Heroin.

Q. And, based upon that what you have observed, did you arrest the defendant?
A. I did.
Q. At that time and place?
A. I did."

The appellant first argues that the trial court erred in failing to sustain his motion to suppress evidence on the basis that the evidence was seized following an illegal arrest. Since this search was conducted outside the judicial process, that is, not under the auspices of a legally obtained search warrant, its justification must be drawn from one of the carefully delineated exceptions to the warrant requirements of our State and Federal Constitutions. *Sayne* v. *State* (1972), 258 Ind. 97, 279 N. E. 2d 196. The exception relied upon by the State in this case, and denied by the appellant, is that this search was incident to a legal arrest. As we pointed out in *Paxton* v. *State* (1970), 255 Ind. 264, 263 N. E. 2d 636, relying on *Chimel* v. *California* (1969), 395 U. S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685, following a legal arrest:

> "it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction." 263 N. E. 2d at 639.

The appellant argues that this exception to the warrant requirement cannot be invoked in this case because the officer lacked probable cause to arrest the appellant until after he had searched him and found the paraphernalia. He cites in support of his contention the cases of *Enlow* v. *State* (1955), 234 Ind. 156, 125 N. E. 2d 250, and *Crowe* v. *State* (1969), 251 Ind. 562, 243 N. E. 2d 759, both of which excluded evidence gathered after an illegal arrest. However, we do not find those cases appropriate since both involved situations in which the officer's arrest was based on a mere hunch or suspicion unsupported by articulable facts indicating that the felony is being or has been committed by the person arrested. In the case at bar, the officer testified that he had

made other arrests involving the use of narcotics, that the appellant was on his knees and incoherent in the hall of the apartment, that his eyes were contracted, and that he found a cooker cap and several matches near the appellant. Although it is obvious, as the appellant points out, that there could conceivably be an innocent explanation for what the officer saw, these facts, in our opinion, do supply the requisite probable cause necessary to support this arrest. The arrest being legal, the resulting search of the person of the appellant was justified and the evidence seized in that search was properly admitted at the trial.

The appellant next urges that the decision of the trial court was not supported by sufficient evidence in that the State failed to prove beyond a reasonable doubt the existence of a specific intent to violate the 1935 Narcotic Act. The appellant was convicted under I.C. 1971, 35-24-1-2, being Burns § 10-3520 (c), which makes it unlawful:

> "for any person to possess or have under his control, with intent to violate any provision of this act any hypodermic syringe or needle or any instrument adapted for the use of narcotic drugs by injection in a human being."

As we said in *Taylor* v. *State* (1971), 256 Ind. 170, 267 N. E. 2d 383:

> "The statute sets out three elements to be proved and it does not permit conviction merely upon showing of possession of adapted instruments. To permit such a conviction would be in effect to amend the statute. We assume the Legislature did not do a useless act in including the element of intent; if they had intended to punish the mere possession of adapted instruments they would not have included that element. The fact that the Legislature included the requirement that intent be proved necessarily implies that they recognize that there could be cases of possession of adapted instruments which would *not* be punishable under the statute." (Original emphasis) 267 N. E. 2d at 385.

The appellant argues that no intent to use the material found was proven in this case and that, therefore, his case of

possession of the instruments would not be punishable under this statute. In *Taylor, supra,* we reversed the conviction where the narcotics paraphernalia was found on the appellant after he had been arrested for shoplifting. There was no evidence in *Taylor* connecting the defendant with the use of drugs. In a similar situation, in *Stevens* v. *State* (1971), 257 Ind. 386, 275 N. E. 2d 12, we affirmed a conviction under this statute, where the appellant was found with similar paraphernalia after being arrested for shoplifting. However, Stevens unlike Taylor, had needle marks in his arm indicating narcotic injections and he admitted his prior involvment with narcotics. We held these facts sufficient to distinguish the *Stevens* case from *Taylor, supra.* Similarly, in the case at bar, the officer testified that in his opinion the appellant had just injected himself with narcotics. This opinion was born out by the appellant's physical condition as well as the presence of the cooker, matches, eye-dropper, needle, and the presence of a fresh puncture mark on the appellant's arm. Looking to the officer's testimony and the reasonable inferences therefrom which support the finding of the trial court, we find that the facts stated supply sufficient evidence of probative value from which the trier of fact could reasonably infer the appellant was guilty beyond a reasonable doubt.

Judgment affirmed.

Arterburn, C. J., Givan, Hunter and Prentice, JJ., concur.

NOTE.—Reported in 282 N. E. 2d 825.