DWIGHT SARGENT *v.* STATE OF INDIANA.

[No. 372A127. Filed October 10, 1972. Rehearing denied November 13, 1972. Transfer denied March 20, 1973.]

*Frederick J. Graf, Martz, Beattey, Hinds & Wallace,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *A. Frank Gleaves, III,* Deputy Attorney General, for appellee.

WHITE, J.—Defendant appeals from a sentence of one to five years pursuant to a jury verdict finding him guilty of possession of a "needle, cooker and eye-dropper with intent

to unlawfully administer and use narcotic drugs. . . ."[1] His indictment on that charge resulted from discovery by police of the specified articles during defendant's arrest on a warrant issued in an unrelated case. The arrest was made at an apartment in the City of Indianapolis where defendant, aged nineteen, resided with his mother and brothers.

Defendant has argued three contentions of trial court error:

1. Error in overruling defendant's pre-trial motion to suppress evidence.
2. Error in failing to conduct an intra-trial hearing on whether to order the State to produce a transcript of Officer Ingram's testimony before the grand jury.
3. Error in that the evidence of intent was insufficient to sustain the conviction.

## I.

The motion to suppress charged that "certain evidence" (apparently the needle, cooker and eyedropper, called by heroin users an "outfit") was seized as the result of a search which was unreasonable in that it was without defendant's consent, without a search warrant, and not incident to a valid arrest. In other words, that there was a *search* which was illegal. No attack, however, is made on the validity of the arrest warrant by virtue of which the arresting officers entered the apartment and arrested defendant. And the evidence most favorable to the State, at the hearing on the motion to suppress, is that the articles seized were in plain view,[2] hence there was no search. *Alcorn*

---

1. The quoted words are from the indictment charging a violation of Ind. Ann. Stat. § 10-3520(C) (Burns 1971 Supp.), IC 1971, 35-24-1-2(c), Ind. Acts 1935, Ch. 280, § 2, as added by amendment Ind. Acts 1961, Ch. 90, § 2, which reads:

"(c) It shall be unlawful for any person to possess or have under his control, with intent to violate any provision of this act, any hypodermic syringe or needle or any instrument adapted for the use of narcotic drugs by injection in a human being."

2. That the arresting officer who gave the "plain view" testimony at the suppression hearing gave a different version in his trial testimony can have no bearing at all on the propriety of the trial court's ruling on

v. *State* (1970), 255 Ind. 491, 265 N. E. 2d 413, 416, 24 Ind. Dec. 268, 273; *Ford* v. *State* (1971), 257 Ind. 498, 275 N. E. 2d 808, 810, 28 Ind. Dec. 155, 157; *Presley* v. *State* (1972), 152 Ind. App. 637, 284 N. E. 2d 526, 31 Ind. Dec. 592.

Incidental to this claim of error defendant contends the court erred in granting the State a continuance (or recess) of the pre-trial hearing so the prosecutor could obtain a witness: the police officer who had seized the articles and who, when produced at the second session of the hearing, testified that they were in plain view. Since the State had failed to subpoena the officer the court would have been justified in denying the request for continuance, but there was no abuse of discretion in granting it. *Spangler* v. *United States Rubber Co.* (1962), 133 Ind. App. 468, 470, 183 N. E. 2d 212, 213; *Walker* v. *State* (1970), 255 Ind. 65, 262 N. E. 2d 641, 644, 23 Ind. Dec. 104, 109; *Johnson* v. *United States* (CA 8, 1961), 291 F. 2d 150, 153, cert. den. 368 U.S. 880.

## II.

At the trial, during cross-examination of this same police officer (Ingram) it was brought out that he probably had testified before the grand jury, although he said his memory of having done so was not certain. Defendant's counsel then moved "to have produced the testimony at the grand jury of this witness concerning this case." The trial deputy prosecutor, when asked by the court whether he "or anyone else in the Prosecutor's office that you know of" had ever had "a substantially verbatim transcript" of the witness' testimony, replied in the negative. The court then denied the request with the remark that, "He can't produce what he doesn't have."

Defense counsel at no time made any request for a hearing and made no further attempt to show that a transcript of

the motion to suppress. The officer was cross-examined at the trial regarding that difference but no objection to the admissibility of any of the evidence was ever made at the trial.

Officer Ingram's grand jury testimony was in the Prosecuting Attorney's possession or that the State could, or probably could, effect its production even though it was not in the prosecutor's possession. Nor did the defense make any attempt to show that any recording was ever made of the witness' grand jury testimony, either stenographically, electronically, or otherwise.

The Supreme Court of Indiana has included in its Rules of Criminal Procedure[3] no provision concerning discovery, but has said in an opinion:

> "The rules of discovery applicable in civil proceedings in Indiana courts are not applicable as such in criminal proceedings. However, the *techniques* of discovery embodied in those rules will often be applicable in criminal proceedings and the trial court has the inherent power to implement such discovery techniques as are necessary to provide the defendant a full and fair hearing." (Original emphasis.) *Antrobus* v. *State* (1970), 253 Ind. 420, 423, 254 N. E. 2d 873, 874.

In that case the Indiana Supreme Court overruled *Mahoney* v. *State* (1964), 245 Ind. 581, 201 N. E. 2d 271, and prior cases holding that defendants had no right under any circumstances to inspect transcripts of grand jury testimony, saying (with respect both to grand jury testimony and written statements given to the police, but with particular attention to the latter) :

> "With respect to a defendant's right to obtain such statements we hold the rule to be this: First, the defendant must lay the proper foundation for his motion or the trial court may properly deny it. An adequate foundation is laid when: (1) The witness whose statement is sought has testified on direct examination; (2) A substantially verbatim transcription of statements made by the witness prior to trial is shown to probably be within the control of the prosecution; and, (3) The statements relate to matters covered in the witness' testimony in the present case.
>
> "After laying this foundation, the defendant may move the trial court to require the State to produce such state-

---

3. Part IV of "Rules of Procedure of the Indiana Supreme Court" adopted by order dated July 29, 1969, "to become effective immediately following midnight of the 31st day of December, 1969."

ments for use by the defense in cross examination and impeachment of the witness. If the foundation is proper the trial court must grant the motion and order the statements turned directly over to the defendant *unless* the State alleges: (a) There are no such statements within the control of the State. The trial court must conduct a hearing on the conflicting claims of the parties to resolve this issue." (253 Ind. at 427.)

In that case there was no direct evidence of probability that a substantially verbatim transcription of the witness' testimony was within the control of the prosecution. Nevertheless the court said:

"Applying the foundation requirements set out above it is obvious that a substantially verbatim transcription of the witness' grand jury testimony concerning this case was shown to probably be within the control of the prosecution.
"This fully met the foundation requirements set out above."

The only evidence from which the court could have concluded that such probability was *obvious* was the witness' testimony that he had testified before the grand jury. The court apparently assumed, *sub silentio*, that the statutory requirement that a clerk or stenographer take and preserve grand jury testimony for the use of the prosecuting attorney[4] justified the inference that one had done so. Since the evidence here is substantially the same, it is clear here also that the defendant had "fully met the foundation requirements." Thus the only reason for not granting the defendant's motion was the State's allegation that no transcript of the witness' grand jury testimony was within its control. In that situation the trial court's duty is clear. It "must conduct a hearing on the conflicting claims of the parties. . . ." (253 Ind. 427.)[5]

4. Ind. Ann. Stat. § 9-810 (Burns 1971), IC 1971, 35-1-15-10, Acts 1905, Ch. 169, § 96, as amended by Acts 1963, Ch. 124, § 1. See *Jaudon* v. *State* (1970), 255 Ind. 114, 262 N. E. 2d 851, 852, 23 Ind. Dec. 182, 185.

5. In failing to hold a hearing the trial judge was probably relying on the following statement in *Yeary* v. *State* (1971), 257 Ind. 159, 273 N. E. 2d 96, 99, 26 Ind. Dec. 717, 722, which, although it does not

Had it done so, the court, the defendant, and the witness would probably have heard testimony proving to their satisfaction that the witness was mistaken about having testified before the grand jury in this case. Unfortunately that fact was not brought out until the State filed a response to the defendant's amended motion to correct errors. To that response was appended an affidavit of the deputy prosecutor in charge of the grand jury investigation of this case which makes that fact certain. Error in failing to conduct a hearing has thus been rendered harmless.

Defendant also contends there was insufficient evidence of intent; a contention so devoid of merit that it deserves but slight attention.

There was substantial evidence of probative value from which the jury could have found, beyond a reasonable doubt, that defendant was trying to hide the so-called "outfit"[6] when the officers entered the room with the warrant for his arrest;

mention *Antrobus, appears* to limit its holding that the trial court "must conduct a hearing" to those situations in which the defendant not only lays a proper foundation but also to those in which he *requests* a hearing:

"Finally, appellant urges that the trial court erred when it failed to conduct a hearing to resolve a conflict of the parties, as to the existence of a written statement made and signed by the prosecuting witness. During cross examination by the appellant's counsel of the prosecuting witness, she testified that she had made a statement to the police, concerning the alleged rape. Upon appellant's motion, the court ordered the prosecution to produce the statement. The prosecution did not produce the statement, alleging that it had no such statement. The appellant did not request a hearing on the existence of the statement, as to whether or not the prosecuting attorney had in his possession or under his control such a statement. Under the circumstances we find no error in the trial court's action."

However, until the Supreme Court itself expressly resolves the apparent conflict between *Yeary* and *Antrobus*, perhaps by clarifying the "circumstances" which distinguished *Yeary* from *Antrobus*, we shall continue to follow *Antrobus* when we find it applicable. In the meantime those who may be interested in attempting to reconcile the two holdings should read *Dinning* v. *State* (1971), 256 Ind. 399, 269 N. E. 2d 371, 25 Ind. Dec. 449; *Dillard* v. *State* (1971), 257 Ind. 282, 274 N. E. 2d 387, 27 Ind. Dec. 346; *Sexton* v. *State* (1972), 257 Ind. 556, 276 N. E. 2d 836, 28 Ind. Dec. 643; and *Cherry* v. *State* (1972), 258 Ind. 298, 280 N. E. 2d 818, 30 Ind. Dec. 192.

6. A Narcotics Division officer testified that an "outfit" consists of instruments adapted for injection of narcotics into a human body.

that he had needle marks on his arms, one of which was still bleeding at the time of his arrest; that later the same day he was taken to the hospital from the city lockup suffering with withdrawal symptoms; that he later told a detective that he was an addict with a $25.00 per day habit; and that a chemical analysis of the cooker showed traces of heroin. This supplies the evidence of intent wanting in *Taylor* v. *State* (1971), 255 Ind. 245, 267 N. E. 2d 383, 24 Ind. Dec. 666. And though far from identical, it is essentially similar to the evidence of intent found sufficient in *Von Hauger* v. *State* (1971), 255 Ind. 666, 266 N. E. 2d 197, 24 Ind. Dec. 500, and *Eskridge* v. *State* (1972), 258 Ind. 363, 281 N. E. 2d 490, 30 Ind. Dec. 354. See also *Irvin* v. *State* (1972), 258 Ind. 528, 282 N. E. 2d 825, 31 Ind. Dec. 53.

No reversible error having been shown, the judgment is affirmed.

Buchanan, P.J., and Sullivan, J., concur.

NOTE.—Reported in 287 N. E. 2d 795.