GERALD A. BRADLEY *v.* STATE OF INDIANA.

[No. 2-572A3. Filed October 10, 1972.]

*Palmer K. Ward,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Wesley T. Wilson,* Deputy Attorney General, for appellee.

BUCHANAN, P.J.—*STATEMENT OF THE CASE AND FACTS*—This is an appeal by defendant-appellant, Gerald A.

Bradley (Bradley), from a conviction of possession of narcotics-adapted instruments with intent to unlawfully administer narcotic drugs by injection in a human being. Ind. Ann. Stat. § 10-3520 (Burns Supp. 1972). We reverse.

On March 16, 1971, at about 3 o'clock in the afternoon, a police officer was patrolling a high burglary neighborhood in Indianapolis when he saw Bradley and another person walking along Fall Creek Parkway. The person with Bradley was carrying a white bag "with objects in it." As the officer turned his vehicle around to investigate, Bradley and his companion fled. In the ensuing chase, the officer lost sight of both men. However, he soon observed Bradley, this time alone, and approached him for questioning.

As the officer approached, Bradley threw an object wrapped in white tissue paper to the ground. The officer immediately picked up the object, unwrapped it, and found that it contained an eye-dropper with a needle attached. He then searched Bradley, finding in his left coat pocket a bottle cap with burns on the bottom wrapped in yellow tissue paper.

Bradley was indicted by the grand jury for the crime of possession of narcotics adapted instruments with the intent to administer narcotic drugs by way of injection into a human being. This indictment in part reads as such:

> "The Grand Jury for the County of Marion in the State of Indiana, upon their oath do present that GERALD A. BRADLEY on or about the 16th day of March, A.D. 1971, at and in the County of Marion and in the State of Indiana, did then and there unlawfully and feloniously *with intent to unlawfully administer narcotic drugs,* possess and have under his control certain instruments, to-wit: a syringe and hypodermic needle, which said instruments were then and there adapted for the use of narcotic drugs by injection in a human being, . . ." (Emphasis supplied.)

During trial, an officer of the Narcotics Division of the Indianapolis Police Department identified the equipment confiscated from Bradley as instruments commonly used to inject narcotics into the human body.

Bradley was found guilty as charged in the indictment and sentenced from one to five years.

*ISSUE*—Was the evidence sufficient to sustain Bradley's conviction for possession of narcotics adapted instruments with the intent to unlawfully administer narcotics to a human being?

Bradley contends that a conviction for the offense charged cannot stand upon a showing of mere possession of instruments adapted for the injection of narcotics into the human body. There must be other evidence tending to prove the intent to administer narcotics to the human being. Since the State only proved that Bradley possessed these instruments without proving that he intended to administer narcotics to a human being, the conviction cannot stand.

The State argues that the evidence was sufficient to sustain Bradley's conviction as charged because the intent to use the equipment he possessed could be inferred from his attempt to escape from the police officer.

*DECISION*—It is our opinion that the evidence was insufficient to sustain Bradley's conviction because the State failed to prove the specific intent necessary for conviction, i.e., that Bradley possessed the narcotics adapted instruments with the intent to administer narcotics to a human being.

On appeal, this court will not weigh the evidence nor determine the credibility of witnesses. We will only consider that evidence most favorable to the State together with all logical and reasonable inferences which may be drawn therefrom. Consequently, a conviction will be affirmed if there is substantial evidence of probative value from which the trier of facts could infer that the defendant was guilty beyond a reasonable doubt. *Vaughn* v. *State* (1972), 259 Ind. 157, 284 N. E. 2d 765; *Hash* v. *State* (1972), 259 Ind. 683, 284 N. E. 2d 770.

Under the indictment, and pursuant to Ind. Ann. Stat. § 10-

3520 (Burns Supp. 1972), the State was required to prove each of the following three elements:

> 1) That Bradley had possession of narcotics equipment, i.e., a syringe and hypodermic needle;

2) That these instruments were adapted for the use of narcotic drugs by injection in a human being; and

3) That Bradley possessed these instruments with the intent to unlawfully administer and use narcotic drugs. *Taylor* v. *State* (1971), 256 Ind. 170, 267 N. E. 2d 383; *Von Hauger* v. *State* (1971), 255 Ind. 666, 266 N. E. 2d 197.

It is uncontested that the evidence presented by the State proved the existence of the first two elements. However, Bradley maintains that the State failed to prove the third element, i.e., that he possessed these instruments with the intent to unlawfully administer narcotics to a human being.

A series of recent cases have considered the quantum of evidence necessary to sustain a conviction for possession of narcotics equipment with the intention to unlawfully administer narcotics. In all but one of the following cases sufficient evidence of such specific intent was determined to exist:

*Von Hauger* v. *State, supra,* presented the most evidence of specific intent, i.e., flight, abandonment of a package, previous convictions, and admissions of narcotic use. In affirming the conviction, Chief Justice Arterburn recognized these factors as indicative of the specific intent required,

> ". . . nor do we think that there is any question here that there was evidence of intent from the history of appellant's own activities, which showed previous convictions with reference to the use of narcotic drugs and a statement which he made to a police officer only a month prior to his arrest that he was a narcotic user. When the appellant saw the police he tried to hide the sack, as well as move toward his running car, all of which is some evidence of a consciousness of guilt."

The evidence in *Eskridge* v. *State* (1972), 258 Ind. 363, 281 N. E. 2d 490, was also convincing—flight, abandonment of a package, recognition of Defendant by police as a narcotics user, admissions of narcotics use and puncture marks on Defendant's hands and arms. The Supreme Court affirmed the conviction on the authority of *Von Hauger* v. *State, supra.*

*Sargent* v. *State* (1972), 153 Ind. App. 430, 287 N. E. 2d 795, followed *Von Hauger* v. *State, supra,* and *Eskridge* v. *State, supra.* The evidence sustaining the *Sargent* conviction was an attempt to secrete the narcotics instruments at time of arrest, puncture marks on Defendant's arms (one of which was still bleeding) existence of withdrawal symptoms requiring hospitalization, and admission of narcotic addiction.

In *Stevens* v. *State* (1971), 257 Ind. 386, 275 N. E. 2d 12, the requisite specific intent was satisfactorily demonstrated by needle marks and admission of narcotic use.

Even less evidence of specific intent was held sufficient in *Dabner* v. *State* (1972), 258 Ind. 179, 279 N. E. 2d 797,—flight plus puncture marks. Justice Prentice concluded that:

> "In the case at bar, although we may not infer the intent from the possession alone, we believe that it may be fairly inferred from such possession, *together with* the puncture marks over the veins of the defendant's forearm evidencing recent injections." (Emphasis supplied.)

In the descending scale of the amount of evidence of specific intent necessary to convict we finally reach *Taylor* v. *State* (1971), 256 Ind. 170, 267 N. E. 2d 383. The evidence in this case indicated *only* that the defendant was in possession of narcotics equipment. The Supreme Court unanimously reversed the defendant's conviction stating:

> ". . . all the evidence showed was that appellant was in possession of adapted instruments. This is not sufficient to satisfy the statutory requirement."

The case before us does not fit in the mold of any of the above six cases, but rather falls between *Dabner* v. *State, supra,* and *Taylor* v. *State, supra.* Like *Dabner* there is evi-

dence of flight but no evidence of puncture marks. Unlike *Taylor* there is evidence of flight and concealment in addition to possession.

The inquiry then becomes one of whether possession plus flight accompanied by attempted concealment is sufficient evidence of specific intent to unlawfully administer narcotics by injection in a human being.

It is true that specific intent may be proven by circumstantial evidence if such evidence excludes all reasonable hypotheses of innocence. But, the circumstantial evidence will not be sufficient if it merely tends to arouse suspicion of guilt. *Easton* v. *State* (1967), 248 Ind. 338, 228 N. E. 2d 6; *Tibbs* v. *State* (1970), 255 Ind. 309, 263 N. E. 2d 728; *Crawford* v. *State* (1968), 251 Ind. 437, 241 N. E. 2d 795.

One example of circumstantial evidence is flight from the scene of a crime. While evidence of flight is competent to show a consciousness of guilt, it is for the trier of fact to determine what weight and value should be placed upon such evidence. *State* v. *Torphy* (1940), 217 Ind. 383, 28 N. E. 2d 70; *Banks* v. *State* (1971), 257 Ind. 530, 276 N. E. 2d 155. Furthermore, flight alone is insufficient to sustain a conviction; it must be combined with other evidence which establishes beyond a reasonable doubt that the defendant committed the crime *with which he is charged.* The general rule recognized by most jurisdictions is perhaps best stated in 1 *Underhill, Criminal Evidence* § 373 at 924:

> "*It cannot be said that flight or attempted flight before arrest, taken alone, raises a legal presumption of guilt so that an inference of guilt must be drawn therefrom,* or that his flight, without regard to the motive which prompted it, is, in law, proof of guilt. At most it is only one circumstance to be considered by the jury with the reasons that prompted it, tending to show guilt or by which an inference of guilt may be raised, and *it has no probative force unless it satisfactorily appears that the accused fled to avoid arrest or imprisonment for the crime charged.* Even then, its force is slight, depending on the efforts made, the means employed, and the motives and knowledge by which the act

was accompanied. The departure of the accused may have been prompted by motives consistent with innocence. He may have feared arrest for a crime totally distinct from that for which he is indicted, or he may have apprehended violence at the hands of the police." (Emphasis supplied, footnotes omitted.) See also: *People* v. *Davis* (1963) 29 Ill. 2nd 127, 193 N. E. 2d 841; *People* v. *Harper* (1967), 36 Ill. 2nd 398, 223 N. E. 2nd 841; *People* v. *Hampton* (Ill. App. 1968), 243 N. E. 2d 371; *Ysasaga* v. *State* (Tex. Crim. 1969), 444 S. W. 2nd 305; *State* v. *Swain* (1968), 1 N. C. App. 112, 160 S. E. 2nd 94; *State* v. *Lincoln* (1969), 183 Neb. 770, 164 N. W. 2nd 470; *Jones* v. *State* (1966), 242 Md. 323, 219 Atl. 2nd 77; *State* v. *Ortiz* (1969), 9 Ariz. App. 116, 449 Pacific 2d 953; *Araujo-Lopez* v. *United States* (9th Cir. 1969), 405 Fed. 2nd 466; *Bailey* v. *United States* (D.C. Cir. 1969), 416 Fed. 2nd 1110.

To the same effect in Indiana is *Banks* v. *State, supra,* in which Justice Prentice put it this way:

"Nevertheless, the flight of an accused is a circumstance to be considered against him only in connection with other evidence, its probative effect, as evidence of guilt, depending upon the conditions and the motive which prompted it. 23 C.J.S. Criminal Law § 907, P. 559. We have previously held that flight alone will not support a conviction and that this is particularly true when there is an explanation of a flight which is consistent with the hypotheses of innocence. *McAdams* v. *State* (1948), 226 Ind. 403, 81 N. E. 2d 671."

The *Von Hauger, Eskridge, Stevens, Dabner,* and *Sargent* cases all contained elements of circumstantial evidence in lieu of or in addition to flight which tended to connect the respective defendants with the particular crime of intending to use narcotics equipment for an unlawful purpose.

In the case before us there are no such elements tending to connect Bradley with the crime of intending to use narcotics equipment for an unlawful purpose. Flight plus possession in these circumstances indicates nothing more than a consciousness of guilt, or arouses suspicion of some wrongful conduct.

The act of attempted concealment of the contraband,

whether considered as a separate act or part of the act of flight, is also no more than a suspicious circumstance.

Perhaps *Bailey* v. *United States, supra,* expresses modern reaction to the significance of flight:

"The evidentiary value of flight, however, has depreciated substantially in the face of Supreme Court decisions delineating the dangers inherent in unperceptive reliance upon flight as an indicium of guilt. [*Wong Fun* v. *United States,* 371 U.S. 471, 1963; *Starr* v. *United States,* 164 U.S. 627, 1897.] We no longer hold tenable the notion that 'the wicked flee when no man pursueth, but the righteous are as bold as a lion.' The proposition that 'one who flees shortly after a criminal act is committed or when he is accused of committing it does so because he feels some guilt concerning that act' is not absolute as a legal doctrine 'since it is a matter of common knowledge that men who are entirely innocent do sometimes fly from the scene of a crime through fear of being apprehended as the guilty parties, or from an unwillingness to appear as witnesses.' "

Evidence of flight and attempted concealment of narcotics adapted equipment in the possession of the accused is insufficient to prove that Bradley possessed these instruments with the specific intent of unlawfully administering or using narcotic drugs in violation of Burns § 10-3520 or any other provision of the Uniform Narcotic Drug Act. Ind. Ann. Stat. § 10-3519 (et seq.) (Burns Supp. 1972). The evidentiary connection is so tenuous that it cannot as a matter of law support a conviction of guilt beyond a reasonable doubt.

This conviction is therefore reversed and remanded to the trial court with instructions to discharge Bradley.

White, J., concurs; Sullivan, J., dissents with opinion.

## DISSENTING OPINION

SULLIVAN, J.—I am in total agreement with the following language contained in the unanimous decision of our Supreme

Court in *Taylor* v. *State* (1971), 256 Ind. 92, 267 N. E. 2d 383, 385:

"The statute sets out three elements to be proved and it does not permit conviction merely upon a showing of the possession of adapted instruments. To permit such a conviction would be in effect to amend the statute. We assume the Legislature did not do a useless act in including the element of intent; if they had intended to punish the mere possession of adapted instruments they would not have included that element. The fact that the Legislature included the requirement that intent be proved necessarily implies that they recognized that there could be cases of possession of adapted instruments which would not be punishable under the statute. This is one of those cases."

and were it not for decisions by that same court beginning with *Von Hauger* v. *State* (1971), 255 Ind. 666, 266 N. E. 2d 197 and continuing beyond *Taylor* v. *State, supra,* through *Stevens* v. *State* (1971), 257 Ind. 386, 275 N. E. 2d 12 and *Dabner* v. *State* (1972), 258 Ind. 179, 279 N. E. 2d 797, I would vote with my colleagues to reverse.

Recognizing that the case before us involves possession of narcotic paraphernalia, coupled only with flight as distinguished from the particular indicia of unlawful intent presented by the three cases last above cited, the interpretation of the facts by the court in the latter cases nevertheless compels me to the reluctant conclusion that the case before us falls within their ambit.

I would affirm.

NOTE.—Reported in 287 N. E. 2d 759.