MILTON HOMER CARPENTER v. STATE OF INDIANA.

[No. 1-673A124. Filed February 14, 1974.]

*Gene E. Hutson,* Richmond, for appellant.

*Theodore L. Sendak,* Attorney General, *Eric L. Wyndham,* Deputy Attorney General, for appellee.

LYBROOK, J.—Denfendant-appellant Milton Homer Carpenter appeals from a conviction of first degree burglary following trial by court. The issues presented for review are:

1. Whether the trial court erred in overruling appellant's motion to suppress testimony of a witness relating to identification of the appellant, the asserted grounds therefore being an impermissibly suggestive pre-trial photographic identification procedure.

2. Whether appellant's conviction is supported by sufficient evidence.

The facts relevant to the issues on appeal are as follows:

On the morning of November 16, 1972, Stanley McNew drove to the residence of his son and daughter-in-law, Ronald and Julia McNew. Approaching the house in his pickup truck, he observed a light blue station wagon parked on the driveway near the garage door. McNew then momentarily lost sight of the automobile while passing a stand of trees between the road and the house. As he proceeded up the driveway toward the house, he observed the automobile exiting toward him at what he considered to be a relatively fast rate of speed. McNew positioned his truck on the driveway in such a manner as to prevent the automobile from passing. When the auto-

mobile came to a halt, the drivers' side doors of the vehicles were only twelve to eighteen inches apart. McNew asked the two occupants the reason for their presence at his son's residence. The driver, who was later identified by McNew as the appellant, responded that they were searching for someone with a pony. McNew responded that he did not know of anyone who had a pony. Following this conversation, McNew recorded the license number of the automobile as it continued its exit from the driveway.

McNew entered the house through a garage door, using a key provided him by his son. Neither McNew's son nor his daughter-in-law were at home, both being at their places of employment. As he entered the laundry room, McNew observed that a door leading to the outside was open. Glass broken from the door covered the floor on the inside. Two shotguns belonging to McNew's son were lying on the floor near the door. McNew then telephoned the Wayne County Sheriff's Department.

A subsequent investigation culminated in appellant's arrest on the charge of first degree burglary.

### ISSUE 1.

It is first contended that the trial court erred in overruling appellant's motion to suppress any and all testimony of witness Stanley McNew relating to identification of the appellant. Citing *Simmons* v. *United States* (1968), 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, appellant argues that the pre-trial photographic identification procedure conducted by the sheriff's department was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification.

On the afternoon of the burglary, Detective Sergeant Larry Blunk displayed several photographs to McNew in an attempt to identify the occupants of the blue station wagon. McNew was first handed seven photographs, one of which was a picture of the appellant. McNew was unable to identify the

appellant from these pictures. However, this photograph was a blow-up of a picture from a high school book. Taken nearly five years prior to the burglary, it bears little resemblance to the photograph taken at the time of appellant's arrest. McNew was also handed a second group of photographs from which he identified appellant's cousin as being one of the occupants of the station wagon.

At a later date, McNew was shown a third set of photographs. Among these was a more recent picture of appellant, and McNew identified pictures of both appellant and his cousin as the occupants of the station wagon.

Appellant contends that this latter display was impermissibly suggestive in two respects. First, in describing the occupants of the vehicle to Detective Blunk on the day of the burglary, McNew had characterized the two as having "kind of bushy hair". Appellant submits that the pictures of his cousin and himself depict them with more hair than the other pictures presented. Secondly, each of the photographs displayed bore a series of numbers, and appellant's and his cousin's pictures had the same date (11-20-72) listed thereon. The dates shown on the other photographs were different. Appellant submits that this would indicate to McNew that the two persons were in some way linked with each other.

In commenting upon the practice of identification by photograph, the United States Supreme Court in *Simmons* v. *United States, supra,* said:

> ". . . We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, *we hold that each case must be considered on its own facts,* and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (Our emphasis.)

This standard has been subsequently applied in other decisions wherein methods of identification have been questioned, whether the procedure be by lineup, showup, or photograph. Where an out-of-court confrontation procedure is in fact found to be suggestive, the central question becomes whether the identification was reliable under the "totality of the circumstances." *Neil* v. *Biggers* (1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401.

In Neil, the court applied the following test:

". . . As indicated by our cases, the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."

Similarly, our Supreme Court in *Emerson* v. *State* (1972), 259 Ind. 399, 287 N.E.2d 867, said:

". . . The rule in such situations is clear that when it is apparent from the circumstances of the case that there existed a sufficient basis, independent of the photograph, for the identification of the defendant then the verdict will not be disturbed. Wilson v. State (1970), [253] Ind. [585], 255 N.E.2d 817; United States v. Cook, 464 F.2d 251 (8th Cir. 1972). Among those circumstances which should be investigated to determine if there is a sufficient independent origin for the identification are the 'length of time the witness was in the presence of the perpetrator, the distance of the witness from him, the lighting conditions at the time, capacity for observation by the witness, opportunity to observe particular characteristics of the criminal'. Dillard v. State (1971), [257] Ind. [282], 274 N.E.2d 387."

Applying these tests in the instant case, we find a sufficient basis independent of the photographs for McNew's in-court identification of the appellant. McNew conversed with appellant for approximately a minute. While they both remained in their vehicles, the drivers' doors were only twelve to eighteen inches apart and their windows were rolled down. The sun

was shining, and McNew's view of both occupants of the station wagon was not obstructed in any way. Hence, the witness caught much more than a mere glimpse of the suspects. Being suspicious of their presence at his son's residence, he studied them closely.

Neither are we able to conclude that the pre-trial photographic displays were so impermissibly suggestive as to raise a substantial likelihood of irreparable misidentification. It is true that the procedure employed was not perfect. However, we do not believe that it was so suggestive as to taint McNew's in-court identification of appellant, especially in light of the opportunity which McNew had to observe appellant at his son's residence.

We therefore hold that the trial court did not err in overruling appellant's motion to suppress McNew's testimony relating to identification.

## ISSUE 2.

The next issue presented for review is whether the evidence at trial was sufficient to sustain appellant's conviction for first degree burglary.

In this connection, we are mindful that this court can neither weigh the evidence nor determine the credibility of witnesses. Rather, we may consider only that evidence and the reasonable inferences therefrom which support the verdict of the trial court. *Sanchez* v. *State* (1971), 256 Ind. 140, 267 N.E.2d 374; *Goodrich* v. *State* (1973), 158 Ind. App. 416, 302 N.E.2d 885.

Reversal will not result unless there is a lack of substantial evidence upon an essential element of the alleged offense or where the evidence is without conflict leading to only one reasonable conclusion and the trier of fact has reached a contrary result. *Martin* v. *State* (1973), 157 Ind. App. 380, 300 N.E.2d 128; *Wojcik* v. *State* (1965), 246 Ind. 257, 204 N.E.2d 866.

In the instant case, it was incumbent on the State to prove that appellant (1) broke and entered; (2) into a dwelling house or other place of human habitation; (3) with the intent to commit a felony therein. IC 1971, 35-13-4-4; Ind. Ann. Stat. § 10-701 (Burns 1956) ; *Berry* v. *State* (1972), 153 Ind. App. 387, 287 N.E.2d 557.

The evidence adduced at trial linking appellant with the burglary was wholly circumstantial. The break-in occurred sometime during the morning of November 16, after McNew's son and daughter-in-law left for work. McNew encountered appellant and his cousin in the driveway late that same morning. McNew testified that the station wagon was proceeding down the driveway at what he considered to be a relatively fast rate of speed. However, on cross-examination he estimated that the vehicle was travelling only about ten to twelve miles per hour. Appellant explained to McNew that they were searching for someone who owned a pony.

There is no direct evidence establishing that either appellant or his cousin broke and entered into the residence. No property from the home was ever discovered to be in appellant's possession.

It is true that a conviction for burglary may be sustained on circumstantial evidence alone. *Coleman* v. *State* (1971), 257 Ind. 439, 275 N.E.2d 786; However, as our Supreme Court said in *Easton* v. *State* (1967), 248 Ind. 338, 228 N. E.2d 6:

"Where the evidence of an issuable fact is wholly circumstantial in nature the evidence must be so conclusive and compelling in character that it excludes every reasonable hypothesis of the presumption of innocence of the defendant. *White* v. *State* (1948), 226 Ind. 309, 79 N.E.2d 771. While the above rule has been held to be for the guidance of the trial court and on appeal it is not the province or right of this Court to weigh the evidence, however, it is the duty of this Court to examine the record of the evidence to determine whether there was sufficient evidence substantial in character to support the court's finding on each of the issuable facts or elements of the crime

charged beyond a reasonable doubt. *White* v. *State, supra; Baker* v. *State* [(1956), 236 Ind. 55, 138 N.E.2d 641]." See also, *Seats* v. *State* (1970), 254 Ind. 457, 260 N.E.2d 796; *Martin* v. *State, supra; Anderson* v. *State* (1973), 156 Ind. App. 265, 295 N.E.2d 832.

While the evidence placing appellant near the scene of the burglary tends to create a strong suspicion of guilt, we are reminded of the following holding from *Spears* v. *State* (1970), 253 Ind. 370, 254 N.E.2d 203.

". . . this court does not deal in conjecture. Guilt must be proved beyond a reasonable doubt and no other standard of proof will be accepted. Where the evidence merely tends to support a conclusion of guilt it is not enough; such a conclusion must be supported by the evidence beyond a reasonable doubt." (Citations omitted.)

To satisfy the standard of proof beyond a reasonable doubt, the trier of facts, being a prudent or reasonable man, must be so convinced by the evidence that he would "feel safe to act upon such conviction in matters of the highest concern and importance to his own nearest, dearest and most important interests in circumstances where there is no compulsion or coercion to act at all." *Easton* v. *State, supra.*

While the circumstantial evidence presented at trial clearly lends itself to establishing a conclusion of guilt, we find that it is not so conclusive and compelling as to exclude every reasonable hypothesis of the presumption of appellant's innocence. We must therefore hold that the State failed to prove beyond a reasonable doubt that appellant broke and entered into the residence of Ronald and Julia McNew.

In so holding, we deem appropriate the following comment from *Martin* v. *State, supra.* Confronted with a similar situation Judge Hoffman wrote:

". . . were we to conclude that the evidence presented disclosed more than a mere suspicion of guilt, the liberty of many innocent persons would be placed in jeopardy."
Judgment reversed.

Robertson, P.J. and Lowdermilk, J., concur.

NOTE.—Reported at 307 N.E.2d 109.