**Steven Lee CANTRELL, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee.**

No. 01A02–9501–CR–25.

Court of Appeals of Indiana.

Dec. 6, 1996.

Transfer Denied Feb. 19, 1997.

Susan K. Carpenter, Public Defender of Indiana and J. Michael Sauer, Deputy Public Defender, Indianapolis, for Appellant–Defendant.

Pamela Carter, Attorney General of Indiana and Christopher L. Lafuse, Deputy Attorney General, Indianapolis, for Appellee.

**OPINION**

SULLIVAN, Judge.

Steven Lee Cantrell (Cantrell) appeals his conviction for burglary, a Class B felony.[1] The sole issue presented for review is whether the evidence is sufficient to sustain the jury's verdict. We reverse.

The facts most favorable to the judgment are as follows: On March 25, 1994, Joyce Fell (Fell) was delivering mail on her rural route in Adams County, Indiana. As she neared the home of Ed and Phyllis McCullough at about 1:15 p.m., she noticed a red car in the McCulloughs' horseshoe-shaped driveway. The car was parked adjacent to U.S. Highway 33, with its rear bumper flush with the end of the driveway. When Fell stopped at the McCulloughs' mailbox, Cantrell approached her vehicle and told her that he was from Dayton, that his car had broken down and needed a jumpstart, and that the people in the residence were not at home. He did not, however, ask Fell for a jumpstart.

Fell suggested to Cantrell that he walk a mile down the highway to State Line Gas, a nearby business which would have a telephone he could use to summon assistance. As Fell prepared to leave, she glanced in her outside mirror and saw that Cantrell had

1. I.C. 35–43–2–1 (Burns Code Ed.1994).

raised the hood of his car and was walking toward the house. When Cantrell realized Fell was watching him, he returned to his car and looked under the hood. A half hour later, Fell reported the incident to the Sheriff's Department.

Adams County Sheriff's Deputy Don Affolder (Affolder) received a radio dispatch directing him to check out the car in the McCulloughs' driveway. He arrived at approximately 2:00 p.m. and discovered Cantrell's car in the driveway with the hood down. There was just enough room between Cantrell's car and the road for Affolder to park in the driveway.

Cantrell approached Affolder's car, and the deputy asked him what was the matter. Cantrell told Affolder that he had car trouble, but claimed that he had called someone and that "help was on the way." Record at 342. When Affolder asked Cantrell for his name, he replied "Christopher Matt Clark". Record at 343. Cantrell then returned to his car, lifted the hood, and appeared to examine the engine.

As the deputy was leaving the McCullough residence, he wrote down the license number of the car in the driveway. A few minutes later, Affolder was told over his radio that the car was registered to Cantrell. Affolder promptly returned to the McCullough residence to find both Cantrell and his vehicle gone. No more than five minutes had elapsed since Affolder had left Cantrell in the driveway. Affolder then checked the doors and windows in the front of the house but found nothing amiss.

The McCulloughs returned home at 6:45 p.m., nearly five hours after Cantrell had last been seen in their driveway. They discovered that the sliding glass door in the rear of the house had been broken and a number of items were missing, including guns, tools and two videocassette recorders.

Cantrell was charged with Burglary, a Class B felony. He was found guilty and sentenced to a term of sixteen years, with eight years suspended and ten years to be served on probation.

*Sufficiency of the Evidence*

The evidence clearly shows that the defendant was in the McCullough driveway from 1:15 p.m. until shortly after 2:00 p.m. on March 25, 1996. It is also clear that the McCullough residence was burglarized sometime between 12:15 p.m. and 6:30 p.m., during their absence from home. Cantrell surely had an opportunity to commit the crime, but the State must prove more than that. *Briscoe v. State* (1979) 180 Ind.App. 450, 388 N.E.2d 638, 645. It is well established that convictions cannot be based merely upon "being in the 'right place at the wrong time'" and mere presence at the scene of the crime is not sufficient for a conviction. *See McMahel v. State* (1993) Ind.App., 609 N.E.2d 1175, 1177.

Cantrell's presence at the McCullough residence during a portion of the time period during which the premises were burglarized is, at the least, suspicious. However the trier of fact could not, without more, reasonably conclude that Cantrell, beyond a reasonable doubt, is guilty of burglary.

When Cantrell was approached by Deputy Affolder, he told the deputy that his name was "Christopher Matt Clark". This assumption of a false name properly can be taken into account in assessing the defendant's guilt or innocence.

Assuming that Cantrell's untruths are tantamount to constructive flight (see *Rogers v. State* (1974) 262 Ind. 315, 315 N.E.2d 707), we must examine the case law as to what extent flight may be considered as sufficient in establishing guilt beyond a reasonable doubt.

"[F]light alone is insufficient to sustain a conviction; it must be combined with other evidence which establishes beyond a reasonable doubt that the defendant committed the crime *with which he is charged.*" *Bradley v. State* (1972) 153 Ind.App. 421, 287 N.E.2d 759, 762 (emphasis in original). Case law cautions against ascribing too much probative value to evidence of flight:

'It cannot be said that flight or attempted flight before arrest, taken alone, raises a legal presumption of guilt so that an inference of guilt must be drawn therefrom, or

that his flight, without regard to the motive which prompted it, is, in law, proof of guilt. At most it is only one circumstance to be considered by the jury with the reasons that prompted it, tending to show guilt or by which an inference of guilt may be raised, and *it has no probative force unless it satisfactorily appears that the accused fled to avoid arrest ... for the crime charged.* Even then, its force is slight, depending on the efforts made [and] *the means employed,* .... The departure of the accused may have been prompted by motives consistent with innocence. He may have feared arrest for a crime totally distinct from that for which he is indicted, or he may have apprehended violence at the hands of the police.' *Id.* (alteration in original)(third emphasis supplied)(footnotes omitted)(citing 1 Underhill, Criminal Evidence § 373 at 924).

In *Bradley,* the defendant was convicted of possession of narcotics-adapted instruments with intent to unlawfully administer narcotic drugs by injection in a human being. The State attempted to establish the defendant's intent through evidence of flight (i.e. the defendant ran and threw an object to the ground). *Id.* 287 N.E.2d at 760. The court felt that the evidentiary connection was "tenuous" and too slight to support a conviction considering the surrounding circumstances. *Id.* at 763.

It is clear that, if the giving of a false name is to be considered flight, the weight of the evidence is slight, and the way in which the defendant "fled" should be juxtaposed with the crime with which the defendant is charged.

█ It appears to this court that the giving of a false name as evidence of flight is only of significant probative value when the act actually *assists* the defendant in avoiding arrest, i.e., it constitutes avoidance of arrest. In the situation before us, Cantrell would have been left in the same position had he given his true name. The fact that he gave a false name to Deputy Affolder did not help him avoid arrest at all. Although a false name may arguably have assisted him in avoiding a subsequent arrest for the crime once discovered, the situation seems highly analogous to that posited in *Bradley* above. There is a myriad of possible explanations for Cantrell's falsity, and to jump from a lie about his name to substantive proof that Cantrell committed the burglary is too far a leap for this court to make. It does not satisfactorily appear that Cantrell lied to Deputy Affolder to avoid arrest for the crime charged. *Id.* Therefore, evidence that Cantrell lied to Deputy Affolder is to be given little, if any, probative value.

The State's brief places emphasis on two cases. The first, *Grimes v. State* (1983) Ind., 450 N.E.2d 512, asserts that a defendant's untruths about his whereabouts may be considered as evidence of guilt. The State correctly applies that case to the present facts and concludes that Cantrell's concealment of his identity may be considered as evidence of his guilt. Insofar as this comports with the discussion above about the relative value of evidence of flight, this court agrees.

The State relies heavily on *Abercrombie v. State* (1985) Ind., 478 N.E.2d 1236. In *Abercrombie,* the defendant (among others) was seen by the police officer jumping over a retaining wall from the victim's property and proceeding through rough terrain. After the officer identified himself, one of the accomplices fled and the defendant took two extra steps. The defendant was then apprehended. The State's brief contends that Cantrell displayed a "greater consciousness of guilt than the defendant in *Abercrombie.*" Appellee's Brief at 6. However, the defendant in *Abercrombie* had no alternative explanation for his being on the victim's property, unlike Cantrell (however plausible that explanation may be). In *Abercrombie,* the defendant's companion engaged in *actual* flight; the court also considered the defendant's extra steps as possibly "a moment of indecision in which the appellant was contemplating whether to run or not." *Id.* at 1240. Finally, the *Abercrombie* court noted that the defendant was seen near the property "shortly after the time of the break-in". *Id.* In the present case, the break-in could have occurred as much as almost five hours after Cantrell's presence on the property.

In order to determine the sufficiency of the evidence, the court must examine the

totality of the circumstances. In *Beard v. State* (1983) Ind., 448 N.E.2d 1078, the defendant was discovered nearby and holding a hammer shortly after a break in (the victim heard breaking glass). The court noted that the aforementioned facts would not be sufficient to sustain a conviction. However, those facts, coupled with the fact that the defendant fled from the police, were sufficient. *Id.* at 1080 [2]. Again, the case against the defendant in *Beard* is significantly stronger than that before us today. Factors present there but absent here include: actual flight; defendant's presence shortly after the break-in; and the defendant's holding of an instrument that could easily have been used to break the window.

Appellant, on the other hand places significant emphasis on *Carpenter v. State* (1974) 159 Ind.App. 373, 307 N.E.2d 109. In *Carpenter*, the defendant and his cousin were seen in the victim's driveway by the victim's father. The defendant began to exit the driveway at a "relatively fast rate of speed." *Id.* 307 N.E.2d at 110. When the defendant was stopped by the victim's father, they told him that they were looking "for someone with a pony." *Id.* at 111. After the defendant left, the father went into the house and discovered the break-in.

The Court of Appeals reversed the defendant's conviction. Commenting upon the fact that the conviction was based solely on circumstantial evidence, the court noted: " '[w]here the evidence of an issuable fact is wholly circumstantial in nature the evidence must be so conclusive and compelling in character that it excludes every reasonable hypothesis of the presumption of innocence of the defendant.' " *Id.* at 113 (quoting *Easton v. State* (1967) 248 Ind. 338, 228 N.E.2d 6). There was no direct evidence that the defendant ever stepped foot in the victim's house, and although the defendant's actions created a "strong suspicion of guilt," the court could not find that the evidence was "conclusive and compelling". *Id.* 307 N.E.2d at 113–14.

The case before us is highly similar. The evidence lends itself to a conclusion that the defendant was in the house and committed the crime. However, this evidence is not so clear and convincing to support a jury determination that Cantrell is guilty beyond a reasonable doubt. It is important to note that the court in *Carpenter* did not consider the defendant's exiting the driveway as flight. Pursuant to the reasoning above, however, the evidence of flight in the present case is of such slight significance that it may not serve to sway this court from the reasoning elucidated in *Carpenter*.

Without question, "[a] conviction for burglary may be sustained on circumstantial evidence alone." *Coleman v. State* (1971) 257 Ind. 439, 275 N.E.2d 786, 787. But, the court must proceed with care in such circumstances or "the liberty of many innocent persons would be placed in jeopardy." *Martin v. State* (1973) 157 Ind.App. 380, 300 N.E.2d 128. It is simply not enough that the defendant's actions are "fishy." It is not enough that the defendant was found at the scene of the burglary. It is not enough that the evidence suggests that the defendant more than likely committed the crime. The evidence must show that the defendant is guilty beyond a reasonable doubt.

It is true that evidence of flight may be considered with regard to the defendant's guilt or innocence. It is also true that the giving of a false name may be considered a form of flight. However, in analyzing evidence of flight, this court must look at the totality of the circumstances including the method of flight employed and how it relates to the crime. Perhaps if Cantrell had sped away from the police officer in the present situation, the evidence would support a conviction. But, looking at the method of "flight", this court deems as a matter of law that there is not sufficient evidence to convict the defendant.

There is other evidence which adds to the above "suspicious circumstances." As mentioned, Cantrell told both Fell and Affolder that he was experiencing car trouble. However, his car had been moved from the time that Fell left the McCulloughs' and Affolder

---

**2.** *But see Hahn v. State* (1989) Ind.App., 533 N.E.2d 618, 621 n. 3, *trans. denied. Hahn* said that intent to commit theft cannot be inferred by time and manner of entry even when coupled with flight and that cases similar to *Beard* have been impliedly overruled.

arrived. Also, Cantrell's car was no longer on the scene five minutes after Affolder left the residence. It may be highly unlikely that Cantrell was able to repair his vehicle or that help arrived in the short space of time. This evidence makes Cantrell's presence even more suspicious and would imply that Cantrell was "up to no good."

It is true that these additional facts are suspicious and would lead one to conclude that Cantrell had been engaged in questionable activity. However there is no evidence, circumstantial or otherwise, which connects Cantrell with the break-in of the house. There is nothing which indicates that he was inside the residence. It is this sort of evidence—evidence that connects him with the crime with which he is charged—which is necessary for a conviction. It is simply not enough for Cantrell and his actions to be suspicious, no matter how much so, unless those suspicions are linked to the crime. Even with the additional evidence concerning the state of Cantrell's car, this court is compelled to hold that the evidence is insufficient to support the jury's verdict.

The judgment is reversed, and the cause is remanded with instructions to order the defendant discharged.

KIRSCH and RILEY, JJ., concur