John R. BRINK, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 19A01–0412–CR–534.

Court of Appeals of Indiana.

Nov. 15, 2005.

Transfer Denied Dec. 22, 2005.

Susan K. Carpenter, Public Defender of Indiana, J. Michael Sauer, Deputy Public Defender, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, Mara McCabe, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

SHARPNACK, Judge.

John R. Brink appeals his convictions for burglary as a class C felony[1] and theft as a class D felony.[2] Brink raises one issue, which we restate as whether the evidence is sufficient to sustain his convictions. We affirm.[3]

The facts most favorable to the convictions follow. On April 19, 2004, Glen Arvin was working as the night watchman at the Hasenour Motor Company in St. Anthony, Indiana. At 9:45 p.m., Arvin saw a white box truck pull into the parking lot of the Fast Break convenience store. Betty Bromm, the cashier at the Fast Break, also saw a white box truck pull into the parking lot at approximately 9:55 p.m. The Fast Break was closing at 10:00 p.m., and the person in the box truck did not enter the store.

Later, at 10:45 p.m., Arvin saw a man wearing dark clothing force open the door to a storage building at the nearby St. Anthony Mill. A couple of minutes later, the man exited the storage building and ran behind the main building at the Mill. Arvin then called 911 to report the incident. Before the police arrived, Arvin saw a white box truck "pull on the highway down by the bank." Transcript at 111. The Dubois County Bank was separated from the Mill by a wheat field and a road. The box truck was the only vehicle that Arvin saw getting on the highway at that time. It was "probably not over three minutes" between the time the man left the storage building until the time Arvin saw the box truck. *Id.*

A short time after Arvin called 911, an officer pulled over a white box truck, which was driven by Brink. Brink told the officer that he was driving from Illinois to Cincinnati for his job. Brink told another officer that he had stopped at the Fast Break convenience store but that he did not go in because the store was closing. Brink said that he then went to the bank parking lot and "relieved himself" and that "he was only in the area for just a couple of minutes." *Id.* at 142. The officer noticed that Brink's overalls were damp at the top and "pretty wet" from the knees down. *Id.* at 144. Brink had $35.00 in cash in the chest pocket of his overalls in denominations of two ten-dollar bills, two five-dollar bills, and five one-dollar bills. Brink also had $142.00 and two work-issued gas credit cards in his wallet, which was located in his back pocket. The officer asked Brink why the $35.00 was in his pocket instead of his wallet, and Brink replied that his wife gave him a one hundred dollar bill earlier that evening and that the $35.00 was change from buying gasoline with the one hundred dollar bill. The officer asked if Brink had a receipt for the gasoline, and Brink responded that the receipt would be in the console if he had it, but the officer was unable to locate a receipt for the gasoline. The officer also asked Brink why his pants were wet, and Brink said that he had stopped in Evansville to wash his windshield. The officer found two long-handled screwdrivers between the console and the driver's seat, and one of the screwdrivers had approximately a half-inch blade.

---

1. Ind.Code § 35–43–2–1 (2004).

2. Ind.Code § 35–43–4–2(a) (2004).

3. Oral argument was held in this case on October 13, 2005, at Scottsburg High School in Scottsburg, Indiana, with students from Scottsburg High School, Austin High School, and Crothersville High School in attendance. We thank Scottsburg High School and the Scott County Bar for their hospitality and appellate counsel for their able presentations.

Detective Gary W. Harlow of the Dubois County Sheriff's Department investigated the burglary. The investigation revealed that doors of each of the Mill's three buildings had been pried open and that petty cash in the amount of twenty to fifty dollars was missing from the Mill. Additionally, the investigation revealed a trail through a wheat field from the Mill to the nearby Dubois County Bank. The trail was visible because the wheat had been stepped on, and the wheat was one and one-half to two feet tall. There was also a heavy dew that evening. Detective Harlow found "flat soled shoe prints" in one of the Mill's buildings, and Brink was wearing "flat soled cowboy boots." *Id.* at 174. The detective also found pry marks on the doors at the Mill, and "[i]t looked like something with approximately a half inch blade had been used to pry" open the doors. *Id.* at 176. A screwdriver retrieved from Brink's truck "appeared" to match the size and shape of the indentations made on the doors at the Mill. *Id.* at 177–178.

The State charged Brink with burglary as a class C felony and theft as a class D felony and being an habitual offender.[4] A jury found Brink guilty as charged. The trial court sentenced Brink to six years for the burglary conviction to be concurrent with three years for the theft conviction. The trial court also enhanced the burglary conviction by four years for an aggregate sentence of ten years in the Indiana Department of Correction.

The issue is whether the evidence is sufficient to sustain Brink's convictions for burglary and theft. When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. We look to the evidence and the reasonable inferences therefrom that support the verdict and will

affirm a conviction if evidence of probative value exists from which a jury could find the defendant guilty beyond a reasonable doubt. *Pratt v. State*, 744 N.E.2d 434, 436 (Ind.2001). It is well established that "circumstantial evidence will be deemed sufficient if inferences may reasonably be drawn that enable the trier of fact to find the defendant guilty beyond a reasonable doubt." *Id.* at 437.

 Mere presence at the crime scene with the opportunity to commit a crime is not a sufficient basis on which to support a conviction. *Id.* at 436. However, presence at the scene in connection with other circumstances tending to show participation, such as companionship with the one engaged in the crime, and the course of conduct of the defendant before, during, and after the offense, may raise a reasonable inference of guilt. *Id.; Maul v. State*, 731 N.E.2d 438, 439 (Ind.2000).

The offense of burglary is governed by Ind.Code § 35–43–2–1, which provides that "[a] person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary, a Class C felony." The State was required to prove beyond a reasonable doubt that Brink did break and enter the St. Anthony Mill with the intent to commit theft. The offense of theft is governed by Ind.Code § 35–43–4–2(a), which provides that "[a] person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony." Thus, the State was required to prove beyond a reasonable doubt that Brink knowingly or intentionally exerted unauthorized control over the St. Anthony Mill's petty cash with intent to

4. Ind.Code § 35–50–2–8 (2004).

deprive the Mill of any part of its value or use.

Brink argues that the evidence is insufficient to sustain his conviction because the State presented no evidence that he was inside of the Mill's buildings, that he was ever on the Mill's property, or that he was in possession of any property taken from the Mill. In support of Brink's argument, he relies in part upon *Janigon v. State*, 429 N.E.2d 959, 960 (Ind.1982), and *Cantrell v. State*, 673 N.E.2d 816, 816–817 (Ind.Ct. App.1996), *trans. denied.* In *Janigon*, the defendant was convicted of the robbery of a drug store. *Janigon*, 429 N.E.2d at 960. The pharmacist and the cashier could not identify the defendant as having participated in the robbery. *Id.* A customer testified that he saw the defendant "walking, like pacing, back and forth ... looking around the store." *Id.* The customer stated he entered the store, saw the defendant, and went to the pharmacy counter located at the rear of the store, where one of the robbers ordered him behind the counter while the pharmacist gathered money and drugs. *Id.* The robber then instructed the pharmacist and the customer to go to the front of the store. *Id.* The customer testified that the defendant was not in the aisle at that time nor, to his knowledge, present in the store. *Id.* The defendant was later seen walking nearby and had possession of money in the same denomination, amount and folded in the same manner as those stolen in the robbery. *Id.* On appeal, our supreme court held that the evidence was not sufficient to support the verdict of guilty beyond a reasonable doubt because "[m]ere presence at the scene of a crime is of itself not sufficient to sustain a conviction for participation," and only one of the State's witnesses could testify to the defendant's presence at the store without any indication of participation. *Id.* at 960–961.

Like *Janigon*, Brink was found with a similar amount of money as that stolen. However, *Janigon* is distinguishable from this case because, unlike in *Janigon*, additional evidence indicated that Brink participated in the burglary and theft. Brink was admittedly at the bank parking lot, and a trail led from the bank parking lot through a wheat field to the Mill. There was a heavy dew that evening, and Brink's pants were wet when the officers stopped him. Doors on each of the Mill's three buildings had been pried open with what appeared to be "something with approximately a half inch blade," and a screwdriver retrieved from Brink's truck appeared to match the size and shape of the indentations made on the doors at the Mill. Transcript at 176. Further, shoe prints from a flat-soled shoe were found in one of the Mill's buildings, and Brink was wearing flat-soled cowboy boots.

In *Cantrell*, the defendant was seen by Joyce Fell at 1:15 p.m. while Fell was delivering mail. *Cantrell*, 673 N.E.2d at 816. The defendant was parked in the driveway of the McCullough residence and told Fell that his car had broken down and needed a jumpstart and that the people in the residence were not at home. *Id.* He did not, however, ask Fell for a jumpstart. *Id.* Fell suggested that he walk to a nearby business to use the telephone. *Id.* As Fell prepared to leave, she glanced in her outside mirror and saw that the defendant had raised the hood of his car and was walking toward the house. *Id.* at 816–817. When the defendant realized Fell was watching him, he returned to his car and looked under the hood. *Id.* at 817.

A half hour later, Fell contacted the police, and a deputy arrived at the home at approximately 2:00 p.m. *Id.* The deputy discovered the defendant's car in the driveway with the hood down. *Id.* The defendant claimed that he was having car

trouble and that someone was on his way to help. *Id.* The defendant also gave the deputy a false name. *Id.* After the deputy left, he learned that the vehicle was not registered to the name the defendant had given. *Id.* The deputy returned to the residence within five minutes, and the defendant and his vehicle were gone. *Id.* Later that day, the residents of the house found that the house had been broken into and a number of items were missing. *Id.* The defendant was found guilty of burglary. *Id.*

On appeal, this court concluded that, although the "evidence lends itself to a conclusion that the defendant was in the house and committed the crime," the "evidence is not so clear and convincing to support a jury determination that [the defendant] is guilty beyond a reasonable doubt." *Id.* at 819.

Without question, "[a] conviction for burglary may be sustained on circumstantial evidence alone." *Coleman v. State* (1971) 257 Ind. 439, 275 N.E.2d 786, 787. But, the court must proceed with care in such circumstances or "the liberty of many innocent persons would be placed in jeopardy." *Martin v. State* (1973) 157 Ind.App. 380, 300 N.E.2d 128. It is simply not enough that the defendant's actions are "fishy." It is not enough that the defendant was found at the scene of the burglary. It is not enough that the evidence suggests that the defendant more than likely committed the crime. The evidence must show that the defendant is guilty beyond a reasonable doubt.

It is true that evidence of flight may be considered with regard to the defendant's guilt or innocence. It is also true that the giving of a false name may be considered a form of flight. However, in analyzing evidence of flight, this court must look at the totality of the circumstances including the method of flight employed and how it relates to the crime. Perhaps if Cantrell had sped away from the police officer in the present situation, the evidence would support a conviction. But, looking at the method of "flight", this court deems as a matter of law that there is not sufficient evidence to convict the defendant.

There is other evidence which adds to the above "suspicious circumstances." As mentioned, Cantrell told both Fell and [the deputy] that he was experiencing car trouble. However, his car had been moved from the time that Fell left the McCulloughs' and [the deputy] arrived. Also, Cantrell's car was no longer on the scene five minutes after [the deputy] left the residence. It may be highly unlikely that Cantrell was able to repair his vehicle or that help arrived in the short space of time. This evidence makes Cantrell's presence even more suspicious and would imply that Cantrell was "up to no good."

It is true that these additional facts are suspicious and would lead one to conclude that Cantrell had been engaged in questionable activity. However there is no evidence, circumstantial or otherwise, which connects Cantrell with the break-in of the house. There is nothing which indicates that he was inside the residence. It is this sort of evidence—evidence that connects him with the crime with which he is charged—which is necessary for a conviction. It is simply not enough for Cantrell and his actions to be suspicious, no matter how much so, unless those suspicions are linked to the crime. Even with the additional evidence concerning the state of Cantrell's car, this court is compelled to hold that the evidence is insufficient to support the jury's verdict.

*Id.* at 819–820.

*Cantrell* is also distinguishable from this case. Here, some evidence, such as the

pry marks, the shoe prints, the trail through the wheat field, and the wet pants, tied Brink to the burglary and theft. Additionally, petty cash in the amount of twenty to fifty dollars was missing from the Mill. Although Brink had a wallet in his pocket that contained other money, he had $35.00 in cash in the chest pocket of his overalls in denominations of two ten-dollar bills, two five-dollar bills, and five one-dollar bills.

■ According to Brink, the State's circumstantial case, while sufficient to raise suspicions of guilt, did not support a finding of guilty beyond a reasonable doubt. Brink points out many contradictory facts, including that Arvin could not say that the box truck he saw at 9:45 p.m. was the same box truck that he saw an hour later, that Arvin said the man was wearing dark clothing but Brink was wearing overalls and a white t-shirt, that paint samples from the doors at the Mill did not match a white substance found on the blade of Brink's screwdriver, and that it is not unusual to have a screwdriver in a vehicle. Further, Brink points out that a sticky substance known as corn gluten was inside of the Mill's buildings and, despite testing, no corn gluten was found on Brinks' overalls.

■ As Brink points out, the evidence here is subject to conflicting inferences. "The question, however, is whether the inferences supporting the judgment were reasonable, not whether there were other 'more reasonable' inferences that could have been made." *Thompson v. State*, 804 N.E.2d 1146, 1150 (Ind.2004). "Reaching alternative inferences such as this is a function of the trier of fact, not this Court. We cannot reverse the conviction merely because this inference is a plausible one that might have been drawn from the evidence." *Id.* (quoting *Askew v. State*, 439 N.E.2d 1350, 1352 (Ind.1982), *reh'g denied*).

Triers of fact determine not only the facts presented to them and their credibility, but any reasonable inferences from facts established either by direct or circumstantial evidence. It is not necessary that the court find the circumstantial evidence excludes every reasonable hypothesis of innocence. It need only be demonstrated that inferences may reasonably be drawn which support the finding of guilt.

*Id.* (quoting *Metzler v. State*, 540 N.E.2d 606, 610 (Ind.1989)).

The jury here could have reasonably inferred from the evidence presented at trial that Brink parked in the bank parking lot, walked through the wheat field, broke into the Mill's buildings, stole the petty cash, put it in his chest pocket, walked back through the wheat field to his truck, and drove away. The evidence revealed that Brink admitted to being in St. Anthony at the time of the burglary, admitted to stopping at the Fast Break, and admitted to stopping in the bank parking lot. Although Brink told the officers that he stopped at the bank to relieve himself, there was approximately one hour between the time that the white box truck was seen at the Fast Break and the time it was seen leaving the bank parking lot. There was a trail through the wheat field separating the Mill from the bank parking lot. Additionally, there was a heavy dew that evening, and Brink's pants were wet. Doors on each of the Mill's three buildings had been pried open with what appeared to be "something with approximately a half inch blade," and a screwdriver retrieved from Brink's truck appeared to match the size and shape of the indentations made on the doors at the Mill. Transcript at 176. Shoe prints from a flat-soled shoe were found in one of the Mill's buildings, and Brink was

wearing flat-soled cowboy boots. Lastly, petty cash in the amount of twenty to fifty dollars was missing from the Mill. Although Brink had a wallet in his pocket with other money, he had $35.00 in cash in the chest pocket of his overalls in denominations of two ten-dollar bills, two five-dollar bills, and five one-dollar bills.

While the jury could have made different inferences from the evidence, we cannot say that the inferences made by the jury here were unreasonable. Thus, we conclude that evidence of probative value exists from which the jury could have found Brink guilty beyond a reasonable doubt of burglary as a class C felony and theft as a class D felony. *See, e.g., Lacey v. State,* 755 N.E.2d 576, 578 (Ind.2001) (holding that the evidence was sufficient to sustain the defendant's convictions for felony murder, burglary, and confinement based upon circumstantial evidence that he was found near the victim's apartment apparently attempting to conceal himself among the vegetation and in close proximity to items used by the intruders).

For the foregoing reasons, we affirm Brink's convictions for burglary as a class C felony and theft as a class D felony.

Affirmed.

BAILEY and DARDEN, JJ., concur.