

ATTORNEY FOR APPELLANT

Megan Shipley
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kory Berkhardt,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

August 10, 2017

Court of Appeals Case No.
49A04-1702-CR-369

Appeal from the Marion Superior
Court

The Honorable Ronnie Huerta,
Commissioner

Trial Court Cause No.
49G09-1607-F6-29576

**Baker, Judge.**

[1] Kory Berkhardt appeals his convictions for Level 6 Felony Unlawful Possession of a Syringe[1] and Class B Misdemeanor Possession of Marijuana.[2] Berkhardt argues that there is insufficient evidence supporting the Level 6 felony conviction and that the sentencing order erroneously states that he was convicted of a Class A, rather than a Class B, misdemeanor for the second conviction. We agree. We reverse the Level 6 felony conviction and remand to the trial court to correct its sentencing order with respect to the misdemeanor conviction.

## Facts

[2] Two Indianapolis Metropolitan Police Department officers were patrolling on the west side of Indianapolis on the morning of Sunday, July 31, 2016. Around 11:00 a.m., the officers saw a woman walk to the side of a closed liquor store. The officers drove into the parking lot to see what she was doing, and saw the woman talking to a man later identified as Berkhardt. Berkhardt was sitting in between two air conditioner units on the side of the liquor store building.

[3] The officers approached Berkhardt and the woman, asked what they were doing there, and asked for identification. Berkhardt handed the officers an identification card, but the officers noticed that the card did not match Berkhardt's appearance, height, or weight. When asked for his name,

[1] Ind. Code § 16-42-19-18.

[2] Ind. Code § 35-48-4-11.

Berkhardt gave the name on the identification card. The officers arrested Berkhardt for failure to identify.

[4] After arresting and handcuffing Berkhardt, the officers searched him. In the waistband of his shorts, they found a gray plastic bag containing two syringes and a substance later determined to be .54 grams of marijuana. Forensic testing later determined that "[t]here were no controlled substances on either of the syringes." Tr. p. 79. The officers found no other drugs on Berkhardt.

[5] On August 1, 2016, the State charged Berkhardt with Level 6 felony unlawful possession of a syringe and Class B misdemeanor possession of marijuana. At the close of Berkhardt's January 11, 2017, jury trial, the jury found him guilty as charged. On January 25, 2017, the trial court sentenced Berkhardt to 795 days on the Level 6 felony conviction and to a concurrent term of 180 days on the Class B misdemeanor conviction. The sentencing order incorrectly states that Berkhardt was convicted of Class A misdemeanor possession of marijuana. Appellant's App. Vol. II p. 13. Berkhardt now appeals.

# Discussion and Decision

## I. Sufficiency of the Evidence

[6] Berkhardt first argues that there is insufficient evidence supporting his conviction for Level 6 felony unlawful possession of a syringe. When reviewing a claim of insufficient evidence, we will consider only the evidence and reasonable inferences that support the conviction. *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). We will affirm if, based on the evidence and

inferences, a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009).

[7] To convict Berkhardt of Level 6 felony unlawful possession of a syringe, the State was required to prove beyond a reasonable doubt that he possessed a hypodermic syringe for the use of a controlled substance or legend drug by injection in a human being with intent to violate the Indiana Legend Drug Act or to commit a controlled substance offense.[3] I.C. § 16-42-19-18. Berkhardt does not contest that he possessed the syringes; he argues that the State failed to prove beyond a reasonable doubt that he did so with the specific intent to violate the Legend Drug Act or to commit a controlled substance offense. In other words, he contends that the State failed to prove that he intended to use the syringes to inject illegal drugs.

## A. Caselaw

[8] This Court has not had occasion to interpret the intent element of this statute in a way that is relevant to this case.[4] There is, however, a relevant, decades-long

---

[3] Both the Legend Drug Act and controlled substance statutes criminalize dealing and manufacture of illegal drugs in addition to mere possession. I.C. §§ 16-42-19-1 to -30; Ind. Code §§ 35-48-4-1 to -17. Therefore, the State could satisfy the intent element by showing that a defendant possessed a syringe with the intent to deal or manufacture illegal drugs. Here, however, the State charged and argued only that Berkhardt possessed the syringes with the intent to inject illegal drugs.

[4] Before 2015, the statute prohibited possession of a syringe only with intent to violate the Legend Drug Act; the statute did not include the current subsection that addresses intent to commit a controlled substance offense. I.C. § 16-42-19-18 (2014). This Court's previous cases address defendants who admitted that they intended to inject drugs that were not legend drugs, and we reversed those convictions as a result. *See Smart v. State*, 40 N.E.3d 963 (Ind. Ct. App. 2015) (defendant admitted intent to inject methamphetamine); *Bookwalter v. State*, 22 N.E.3d 735 (Ind. Ct. App. 2014) (defendant admitted intent to inject heroin). The

line of cases interpreting the intent element of the offenses of possession of narcotics equipment and possession of paraphernalia.

[9] In *Taylor v. State*, Taylor was charged with possession of narcotics equipment; that statute had language similar to the present statute for unlawful possession of a syringe. 256 Ind. 170, 267 N.E.2d 383 (Ind. 1971) (statute making it unlawful to possess a syringe or needle with intent to violate any provision of the Uniform Narcotic Drug Act). At trial, the State presented evidence that when Taylor was searched after being arrested for shoplifting, the officer found a hypodermic needle, eye dropper, and burnt bottle cap. The officer testified that Taylor was an addict but did not explain his source for this claim. Our Supreme Court reversed, noting that there was no evidence of prior drug use, prior drug convictions, incriminating statements made by Taylor, or evidence of flight or concealment. *Id.* at 172-73, 267 N.E.2d at 385. The Court disregarded the testimony that Taylor was an addict because it was "completely useless as evidence." *Id.* at 173, 267 N.E.2d at 385. Therefore, "all the evidence showed was that appellant was in possession of adapted instruments," which was insufficient to satisfy the statutory requirements:

> The statute sets out three elements to be proved and it does not permit conviction merely upon a showing of the possession of adapted instruments. To permit such a conviction would be in effect to amend the statute. We assume the Legislature did not do a useless act in including the element of intent; if they had

legislature amended the statute in 2015 to add the subsection addressing intent to commit a controlled substance offense.

intended to punish the mere possession of adapted instruments they would not have included that element. The fact that the Legislature included the requirement that intent be proved necessarily implies that they recognized that there could be cases of possession of adapted instruments which would not be punishable under the statute. This is one of those cases.

*Id.*

In *Bradley v. State*, Bradley was convicted of possession of narcotics equipment after he ran from an officer in a high crime neighborhood. 153 Ind. App. 421, 287 N.E.2d 759 (Ind. Ct. App. 1972). When the officer stopped him, Bradley threw down an eyedropper with a needle attached and had a burnt bottle cap in his pocket. This Court reversed the conviction, noting that there were no needle marks on Bradley's arms or hands, no admissions to prior drug use, and no prior convictions for drug-related crimes. Ultimately, we found that his flight and attempted concealment of the eyedropper, alone, did not constitute sufficient evidence of the specific intent to use narcotics. *Id.* at 429, 287 N.E.2d at 763.

More recently, in *Sluder v. State*, Sluder was convicted of possession of paraphernalia after a search incident to arrest on an unrelated warrant revealed a syringe in Sluder's rear pocket. 997 N.E.2d 1178 (Ind. Ct. App. 2013). Sluder denied the syringe was his. No drugs were found on his person, he had no track marks on his arms, there was no evidence of previous drug use, and he had no previous drug convictions. Citing *Taylor* and *Bradley*, this Court held that mere possession of the syringe was insufficient to satisfy the intent element.

We rejected the State's argument that Sluder's inconsistent statements, alone, showed consciousness of guilt: "Merely denying ownership of an item without more is insufficient to indicate a consciousness of guilt." *Id.* at 1182.

[12] Cases in which courts have found sufficient evidence of unlawful intent generally include evidence of prior narcotics convictions; admissions to drug use; the presence of illegal drugs or drug residue on the paraphernalia; track marks on the defendant's arms or hands; or withdrawal symptoms showing recent drug use. *E.g.*, *Perkins v. State*, 57 N.E.3d 861, 866 (Ind. Ct. App. 2016) (heroin residue on paraphernalia and defendant's flight immediately after officers discovered paraphernalia); *Trigg v. State*, 725 N.E.2d 446, 450 (Ind. Ct. App. 2000) (cocaine residue on crack pipe); *McConnell v. State*, 540 N.E.2d 100, 103-04 (Ind. Ct. App. 1989) (presence of marijuana residue on marijuana pipe); *Dabner v. State*, 258 Ind. 179, 182, 279 N.E.2d 797, 798-99 (Ind. 1972) (recent needle marks); *Sargent v. State*, 153 Ind. App. 430, 436-37, 287 N.E.2d 795, 798-99 (Ind. Ct. App. 1972) (heroin residue on paraphernalia, recent needle marks, symptoms of withdrawal, admission that he was an addict); *Stevens v. State*, 257 Ind. 386, 388-89, 275 N.E.2d 12, 13 (Ind. 1971) (needle marks, admission to past narcotics use); *Von Hauger III v. State*, 255 Ind. 666, 668, 266 N.E.2d 197, 198 (Ind. 1971) (prior convictions for narcotics crimes, admission to narcotics use, attempt to hide paraphernalia). Several of these cases discuss flight and/or concealment as factors supporting an inference of intent, but they reaffirm the holding in *Bradley* that flight or concealment *alone* is insufficient to establish intent. *Perkins*, 57 N.E.3d at 865; *McConnell*, 540 N.E.2d at 102.

## B. Berkhardt

The State argues that the following evidence constitutes sufficient circumstantial evidence of Berkhardt's intent to use the syringes to inject illegal drugs: absence of evidence of a medical use for the syringes and possession of the syringes in a non-medical setting; evidence that Berkhardt and the woman were hiding from the police; Berkhardt's possession of marijuana; and Berkhardt's use of a false name and identification card.

## 1. No Medical Use, Non-Medical Setting

With respect to the absence of evidence of a medical use for the syringes, this argument is an inappropriate attempt to shift the burden to Berkhardt to explain his possession of the syringes. Instead, the statute requires the State to prove his intent beyond a reasonable doubt. We have long rejected the argument that the intent element can be inferred from unexplained possession of a syringe. As noted above, mere possession of the syringes (whether or not there is a medical use, and whether or not it is in a medical setting) is insufficient evidence for the State to meet its burden. This evidence does not support the conviction.

## 2. Concealment From Police

The State next contends that it can be inferred that Berkhardt and the woman were concealing themselves from the police on the side of the liquor store. *See Willis v. State*, 27 N.E.3d 1065, 1067 (Ind. 2015) (attempting to hide from law enforcement to avoid arrest can be circumstantial evidence of guilt). The record, however, belies the State's contention. The officers pulled into the

liquor store parking lot because they saw a woman walk to the side of the closed store at 11:00 a.m. on a Sunday morning. When the officers got there, Berkhardt was *already* sitting on the pavement between two air conditioning units. He did not move when the police approached. It cannot be reasonably inferred from this evidence that Berkhardt was attempting to conceal himself from the police.

[16] And the State's assertion that Berkhardt and the woman were planning to "complete some illegal transaction" is mere speculation. Appellee's Br. p. 11. There was no evidence that the woman made any incriminating statements, that she possessed anything illegal, or that either Berkhardt or the woman made furtive movements when the police approached. There was evidence that the woman had an open warrant, but no evidence of what the warrant was for, or that Berkhardt knew about the warrant. There was no evidence regarding whether Berkhardt and the woman knew each other previously. There was also no evidence as to the reason she approached him that morning or the reason he was sitting in the parking lot. We find that inferring from these circumstances that Berkhardt and the woman must have been conducting an illegal transaction is not reasonable. This evidence does not support the conviction.

## 3. Possession of Marijuana

[17] With respect to Berkhardt's possession of marijuana, this Court has held that the simultaneous possession of an illegal drug and an instrument for administering that particular illegal drug is sufficient to establish intent. *E.g.*,

*McConnell*, 540 N.E.2d at 103. Here, however, the record establishes that a syringe cannot be used to introduce marijuana into the body; instead, an officer testified that syringes are used to inject drugs such as heroin, cocaine, and methamphetamine into the body. Tr. p. 72. Therefore, cases such as *McConnell* are not relevant to our analysis here.

[18] Generally, intent may be inferred "from the actor's conduct and the natural and usual sequence to which such conduct usually points." *McElfresh*, 51 N.E.3d 103, 109 (Ind. 2016). The natural and usual sequence to which possession of a small amount of marijuana usually points is the intent to use marijuana—not the intent to inject or possess some other kind of illegal drug. We cannot conclude that Berkhardt's possession of marijuana satisfies the intent element of the unlawful syringe charge.

## 4. False Name and Identification Card

[19] Next, the State argues that Berkhardt's use of a false name and identification card constituted circumstantial evidence of his intent. This Court has held that using a false name is analogous to flight and that it may be considered circumstantial evidence of consciousness of guilt. *Cantrell v. State*, 673 N.E.2d 816, 816-17 (Ind. Ct. App. 1996). But evidence of flight "has no probative force unless it satisfactorily appears that the accused fled to avoid arrest . . . for the crime charged." *Id.* at 818. The *Cantrell* Court held that, "in analyzing evidence of flight, this court must look at the totality of the circumstances

including the method of flight employed and how it relates to the crime." *Id.* at 819.

[20]     Here, Berkhardt gave the officers the false name as soon as they approached him, before there was any suspicion of a drug-related crime. As one of the officers testified, Berkhardt's motive for using a false name would seem to be avoiding arrest on an open warrant or preventing the police from learning his real identity rather than avoiding arrest for unlawful possession of a syringe. He did not know he was going to be searched at the time he provided the false name, and the syringes were not discovered until well after he used the false name.

[21]     Moreover, to the extent his provision of a false name could constitute a method of concealment or flight, Berkhardt possessed marijuana in addition to the syringes at the time. If he was, indeed, attempting to avoid arrest on a drug charge by providing a false name, there is no way to know whether he was avoiding arrest based on his possession of marijuana or based on his possession of the syringes. The State could not meet its beyond a reasonable doubt burden based on this evidence.

[22]     Furthermore, even if the use of the false name is remotely relevant to Berkhardt's intent, this Court has held for decades that flight or concealment alone is not enough to demonstrate intent in this type of case. *E.g.*, *Perkins*, 57 N.E.3d at 865 (citing *Bradley*, 153 Ind. App. at 429, and holding that "even if there is evidence of flight, attempted concealment, and possession of narcotics-

related equipment, the conviction cannot be sustained absent evidence of intent"). Here, there was no drug or drug residue on the syringes, no evidence of prior drug-related convictions, and no evidence of current or past drug use. Therefore, even if we accepted for argument's sake that Berkhardt's provision of a false name to the police officers was relevant to his intent, it would not be enough.

[23] In sum, there is no direct or indirect evidence establishing Berkhardt's intent to use the syringes to inject illegal drugs. No reasonable factfinder could have found Berkhardt guilty beyond a reasonable doubt based on this record. Therefore, the conviction cannot stand. We reverse.

## II. Misdemeanor Conviction

[24] Finally, Berkhardt was convicted of Class B misdemeanor possession of marijuana but the sentencing order states that he was convicted of Class A misdemeanor possession of marijuana. The State concedes that this is erroneous. We remand to the trial court to correct the sentencing order.

[25] The judgment of the trial court is reversed with respect to the Level 6 felony conviction and remanded with instructions to correct the sentencing order with respect to the Class B misdemeanor conviction.

Bailey, J., and Altice, J., concur.