


FILED

Jun 05 2025, 9:36 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Joseph Ogilvie,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

June 5, 2025

Court of Appeals Case No.
24A-CR-2541

Appeal from the Fayette Superior Court

The Honorable Paul L. Freed, Judge

Trial Court Cause No.
21D01-2405-F6-313

---

**Opinion by Judge Tavitas**
Judges Vaidik and Felix concur.

**Tavitas, Judge.**

## Case Summary

[1] Joseph Ogilvie was convicted of unlawful possession of a syringe, a Level 6 felony, and found to be an habitual offender. He argues that the State presented insufficient evidence to support his conviction for unlawful possession of a syringe. We disagree and, accordingly, affirm.

## Issue

[2] Ogilvie raises one issue, which we restate as whether sufficient evidence supports his conviction for unlawful possession of a syringe.

## Facts

[3] In May 2024, Ogilvie was incarcerated in the Fayette County Jail. Ogilvie was a "floor trustee" responsible for cleaning the hallways. Tr. Vol. IV p. 36. Hidden within a paper towel roll inside the mop closet, Ogilvie found a syringe with a liquid inside. The liquid was "a frosted color, like frosted glass." State's Ex. Vol. 3 at 10:02. Ogilvie said, "Happy birthday," tasted the contents of the syringe, and determined that it did not "taste" like methamphetamine. *Id*. at 9:45.

[4] On the morning of May 2, 2024, Ogilvie collapsed in his cell. Other inmates alerted jail staff of the medical emergency and advised them to bring Narcan, which is "a spray that you put in the nose" to treat an "overdose resulting from opiates." Tr. Vol. IV p. 70-71. The officers found Ogilvie "pale, with his eyes

rolled into the back of his head" and "struggling to breathe." *Id.* at 24, 46. He was holding a syringe in his left hand. The officers performed "sternum rubs" and administered Narcan in four-milligram doses. *Id.* at 48. Ogilvie did not respond to the first dose and showed "a little bit of a reaction" to the second dose. *Id.* at 28. Ogilvie returned to normal "almost immediately" after the third dose. *Id.* at 49.

[5] The officers recovered the syringe and noted that it contained a small amount of a "clear fluid" with a "slight orange tint to it." *Id.* at 65. The officers field tested the fluid twice, but the testing was negative for the presence of a controlled substance. The officers did not send the syringe to the State laboratory because the laboratory does not accept syringes for safety reasons, and the officers did not have a way to "store . . . and send" the contents of the syringe. *Id.* at 94.

[6] Chief Deputy Andrew Blaes of the Fayette County Sheriff's Department interviewed Ogilvie, and Ogilvie "guess[ed]" that the syringe contained fentanyl based on his reaction to the Narcan and his "previous history[.]" State's Ex. 3 at 9:54. Ogilvie explained that he did not "tie off" his arm to expose a vein but rather simply injected the syringe into his arm. Tr. Vol. IV p. 76. Ogilvie also apologized, explaining that he "wasn't planning on it going that far." State's Ex. 3 at 9:58. Ogilvie stated that he injected himself because he "didn't have anything to lose anymore." *Id.*

On May 3, 2024, the State charged Ogilvie with unlawful possession of a syringe, a Level 6 felony. The State later amended the information to allege that Ogilvie was an habitual offender. Ogilvie was tried before a jury in August 2024. The officers at the jail testified that they believed Ogilvie was overdosing on opioids based on their training and his response to the Narcan. Using Narcan on someone who is not overdosing on opioids would result in "no reaction" and would be like "squirting water into [the person's] nose." *Id.* at 30. Regarding the negative field tests, Chief Deputy Blaes explained that some illegal drugs "field test better than others" and that the syringe could have contained illegal drugs notwithstanding the test results. Tr. Vol. II p. 72.

The jury found Ogilvie guilty of unlawful possession of a syringe, and Ogilvie admitted to being an habitual offender. The trial court entered judgment of conviction and sentenced Ogilvie to one and one-half years in the Department of Correction, enhanced by three years for the habitual offender finding, for a total sentence of four and one-half years. Ogilvie now appeals.

## Discussion and Decision

Ogilvie argues that the State presented insufficient evidence to support his conviction. Sufficiency of the evidence claims warrant a deferential standard of review in which we "neither reweigh the evidence nor judge witness credibility, instead reserving those matters to the province of the jury." *Hancz-Barron v. State*, 235 N.E.3d 1237, 1244 (Ind. 2024). A conviction is supported by sufficient evidence if "there is substantial evidence of probative value supporting each element of the offense such that a reasonable trier of fact could

have found the defendant guilty beyond a reasonable doubt." *Id.* In conducting this review, we consider only the evidence that supports the jury's determination, not evidence that might undermine it. *Id.* We affirm the conviction "'unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.'" *Sutton v. State*, 167 N.E.3d 800, 801 (Ind. Ct. App. 2021) (quoting *Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007)).

[10] Ogilvie was convicted of unlawful possession of a syringe pursuant to Indiana Code Section 16-42-19-18, which provides,

> (a) A person may not possess with intent to:
>
>> (1) violate this chapter; or
>>
>> (2) commit an offense described in IC 35-48-4 [offenses regarding the dealing, manufacturing, and possession of controlled substances];
>
> a hypodermic syringe or needle or an instrument adapted for the use of a controlled substance or legend drug by injection in a human being.
>
> (b) A person who violates subsection (a) commits a Level 6 felony.

[11] Here, there is no dispute that Ogilvie possessed a hypodermic syringe. Ogilvie, however, argues that the State failed to prove that he unlawfully possessed the syringe pursuant to Indiana Code Section 16-42-19-18 because the State did not prove that he possessed the syringe with the requisite intent.

[12] This Court discussed the intent requirement of Indiana Code Section 16-42-19-18 in *Berkhardt v. State*, 82 N.E.3d 313 (Ind. Ct. App. 2017). We observed that "sufficient evidence of unlawful intent generally include[s] evidence of prior narcotics convictions; admissions to drug use; the presence of illegal drugs or drug residue on the paraphernalia; track marks on the defendant's arms or hands; or withdrawal symptoms showing recent drug use." *Id.* at 317.

[13] According to Ogilvie, the following demonstrates that he did not possess the syringe with the requisite intent: (1) field testing of the contents of the syringe did not indicate the presence of a controlled substance, (2) no blood tests indicated the presence of a controlled substance in Ogilvie's body, (3) the State did not present evidence of injection or track marks on Ogilvie's skin, and (4) no controlled substances were found on Ogilvie's person or in his cell. Ogilvie also contends that none of the testifying officers were experts on overdoses or the effects of Narcan; however, Ogilvie does not argue that the officers' testimony should not have been admitted. Ogilvie's arguments, thus, are merely a request that we reweigh the evidence, which we cannot do.

[14] Several factors listed in *Berkhardt* are present, as well as several additional factors. The syringe contained an oddly colored fluid that Ogilvie described as

"like frosted glass," State's Ex. Vol. 3 at 10:02, and an officer described as having a "slight orange tint to it," Tr. Vol. II p. 65. When Ogilvie discovered the syringe, he expressed excitement by stating, "Happy birthday," and he determined that the liquid did not taste like methamphetamine. State's Ex. 3 at 9:45. The syringe was in Ogilvie's hand when he collapsed in his cell. Three doses of Narcan were administered to Ogilvie, to which he responded positively. After he recovered, Ogilvie told law enforcement that he believed the syringe contained fentanyl[1] based on his reaction to the Narcan and his "previous history[.]" State's Ex. 3 at 9:54.

[15] The jury could have reasonably found from Ogilvie's statements and his reaction to the injection that Ogilvie possessed the syringe with the intent to inject a controlled substance into his body. Sufficient evidence supports Ogilvie's conviction. *See Cherry v. State*, 971 N.E.2d 726, 732 (Ind. Ct. App. 2012) (holding evidence was sufficient to support conviction for unlawful possession of a syringe under prior version of the statute when syringe was found in defendant's pocket and defendant testified regarding his history of narcotic drug use via injection through a syringe), *trans. denied*.

## Conclusion

[16] Sufficient evidence supports Ogilvie's conviction. Accordingly, we affirm.

---

[1] Fentanyl is a narcotic opioid listed as a Schedule II controlled substance. Ind. Code § 35-48-2-6.

Affirmed.

Vaidik, J., and Felix, J., concur.

ATTORNEY FOR APPELLANT

Christopher Taylor-Price
Taylor-Price Law, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Robert M. Yoke
Deputy Attorney General
Indianapolis, Indiana